UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT
At Hartford

**CENTRIX, INC.**

      Plaintiff

   v.                                  Civil Action No.
                                        3:03 CV 703 (CFD)

**ANDON BRUSH COMPANY, INC.**

      Defendant


**PLAINTIFF, CENTRIX, INC.'S, MEMORANDUM IN SUPPORT
OF ITS RULE 12 MOTION FOR MORE DEFINITE STATEMENT
OR IN THE ALTERNATIVE TO STRIKE AND/OR DISMISS DEFENDANT,
ANDON BRUSH COMPANY, INC.'S, COUNTERCLAIM COUNTS II, III
AND IV.**


Arthur T. Fattibene, CT 06916
Paul A. Fattibene, CT 12760
Attorneys for Plaintiff,
Centrix, Inc.
2480 Post Road
Southport, CT 06890
Tel: 203-255-4400;
Fax: 203-259-0033

**NATURE OF PROCEEDINGS**

On or about October 28, 2003, Defendant Andon Brush Company, Inc. (Andon) filed and served its Answers and Counterclaims on Plaintiff Centrix Inc. (Centrix) to Centrix's complaint. Centrix filed a stipulated and a consented to motion to extend Centrix's time to move or otherwise plead to December 1, 2003.  This is Centrix's memorandum in support of Centrix's Rule 12 motion for a more definite statement and/or to dismiss Andon's Counterclaim II, III, and IV for failing to state a cause of action upon which relief may be granted.

**STATEMENT OF FACTS**

Centrix is a corporation organized under the Laws of the State of Delaware which was founded and organized by Dr. William B. Dragan in 1970.  Over the thirty (30) years, Centrix has grown and is now widely recognized, domestically and internationally, as an innovator of various dental applicators and sundry other dental products.

In November 1988, John J. Discko and Dr. William B. Dragan of Centrix conceived a novel dental brush, which was reduced to actual practice in December 1998, and for which a patent application was filed on March 20, 1989.  The application was assigned SN 325,888 and is now US Patent

1

5,001,803 (the '803 patent) granted March 26, 1991.  The '803 patent is the patent in suit.

    In September 1989, Centrix entered into a supply agreement with the Applicator Company of Riverdale, New Jersey whereby the Applicator Company agreed to supply Centrix with the novel dental brushes.  At the time, Gerald Robbins and Eric Robbins were the principles of the Applicator Company.  The Applicator Company was a job shop manufacturing various types of applicators and brushes for others.  Robert Newell was employed by the Applicator Company as its plant manager responsible for operating and maintaining Applicator Company's brush making machines and equipment.

    About December 1989 or January 1990, Centrix learned that the Applicator Company was on the verge of bankruptcy.  In January 1990, Gerald Robbins, Robert Newell and Centrix entered into discussions relating to forming a new company whereby the new company would continue supply Centrix with the novel dental brush in view of the Applicator Company's imminent bankruptcy.  As a result of these discussions, it was agreed that Centrix, Gerald Robbins and Robert Newell, as equal partners, would form a new company that would continue to manufacture industrial applicators and brushes, and would supply Centrix with the novel dental brushes that

2

were then being supplied by the Applicator Company and which Centrix was marketing.

On February 12, 1990, Centrix, Gerald Robbins and Robert Newell organized and formed the Andon Brush Company Inc. under the Laws of the State of Delaware. The issued shares of Andon were equally divided between Centrix, Gerald Robbins and Robert Newell.

At the start of Andon Brush Co. Inc., Andon purchased a brush making machine which was designed and built by F&W Tool, a machine company then located in Brooklyn, NY for $50,000.00. Because time was of the essence, Centrix paid F&W Tool an additional $5,000.00 premium for immediate delivery of the machine to insure an uninterrupted supply of dental brushes Centrix needed to meet the market demand.

Upon F&W's delivery of the machine to Andon, Andon immediately started to supply Centrix with the dental brushes. For the next ten (10) years, Andon Brush Company Inc. was Centrix's sole supplier of the patented dental brushes. During these ten (10) years, Centrix also improved and expanded its dental brush line; as well as the dental market for such brushes both domestically and internationally.

Over the years that Andon was supplying Centrix, Andon would, at regular intervals, increase its prices for such

3

brushes until Centrix could not meet its competitor's prices, causing Centrix to loose its market share.

To prevent Centrix from losing its market share, Centrix made the decision that Centrix would invest in a brush making machine and produce the dental brushes in-house.  Accordingly, Centrix invested approximately $400,000.00 in a fully automatic brush making machine and commenced making its own dental brushes.  Centrix's brush making machine was designed and manufactured by Adaptive Mfg. Technologies, Inc. in Long Island, New York.  As a result, Centrix phased out Andon as its supplier of brushes.

Sometime in the year 2000, Mr. Newell and Gerald Robbins met with Centrix to learn why Centrix purchase orders for brushes to Andon were diminishing.  At this meeting Andon was advised that Andon's pricing for brushes was too high, causing Centrix to lose its market share as Centrix could not meet its competitors' prices. Centrix also advised Andon that Centrix had purchased a brush making machine.  At this meeting, Centrix showed both Mr. Newell and Mr. Robbins Centrix's new brush making machine.

Shortly thereafter, Gerald Robbins resigned from Andon Brush Company and sold his interest in Andon to Robert

4

Newell.  Centrix still retains its one-third ownership in the issued shares of Andon.

On or about July 2000, Andon commenced its sale of the accused dental brush to the dental profession without the consent of Centrix.

In support of the facts stated herein and other relevant pertinent facts, Centrix submits herein the supporting declarations of John Discko, James Witowski, and Gerald Robbins with attached exhibits.  The facts asserted therein are incorporated herein by reference.

**APPLICABLE LAW**

Rule 12(b)(6), Fed.R.Civ.P., expressly states that "Every defense, in law or fact to a claim for relief in any pleading …, shall be asserted in a responsive pleading if one is required, except that the following defenses may at the option of the pleader be made by motion … (6) failure to state a claim upon which relief can be granted."

Rule 12(e), Fed.R.Civ.P., states:

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement … ."

Rule 12(f), Fed.R.Civ.P., permits a Court to strike from any pleading "any insufficient defense or any redundant, immaterial, … matter."

The underlying purpose behind Rule 12(b)(6), Fed.R.Civ.P., is to allow a court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus spare the litigants the burden of unnecessary pretrial and trial activity. <u>Advance Cardiovascular Systems v. SciMed Life Systems</u>, 988 F.2d 1157, 1160; 26 USPQ 2d 1038, 1041 (Fed Cir 1993).

A claim will only be dismissed under Rule 12(b)(6), Fed.R.Civ.P. if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief. <u>Conley v. Gibson</u>, 355 US 41; 78 S.Ct. 99.

A court may also dismiss under Rule 12(b)(6), Fed.R.Civ.P., where extrinsic materials such as exhibits and other materials properly considered by the Court reveal obvious "built in" defenses, e.g. in the case at bar where the alleged dental brush invention, which Andon alleged was appropriated by Centrix, was actually filed in the U.S. Patent and Trademark Office by Centrix long before there was any relationship between Centrix and Robert Newell or

6

Andon.  Jacobsen v. Deseret Book Co., 287 F.3d 936 (10 Cir 2002).

## **A R G U M E N T**

A review of Andon's alleged affirmative defenses will indicate that the affirmative defenses ten, twelve, thirteen and fifteen are too vague and ambiguous and amount to nothing more than a mere conclusion of law.  As a result, the affirmative defenses as pleaded lack the sufficient notice required by the rules of pleading.  Thus, Centrix cannot properly frame any response thereto or sufficiently prepare any defense thereto.

**As To The Tenth Affirmative Defense**

For this defense, Andon merely pleads "On information and belief, Plaintiff has misused the patents in suit and therefore is precluded from obtaining any relief in this action due to the misuse."  Nothing more is stated in the Complaint that is deemed sufficient to put Plaintiff on notice as to what "patent misuse" Centrix is supposed to have committed.  Even under the most liberal interpretation of the rules of pleading, some form of notice must be stated in order that a plaintiff may form a proper response thereto and/or prepare for a proper defense.  As noted in Advance Cardiovascular Systems, Inc. v. Sci Med Systems, Inc., supra:

7

> "Given the specific exception to patent misuse provided by Congress, defendant must plead more than a conclusory allegation of patent misuse in order to provide fair notice of the nature of the defense."

In the absence of any more particular statement, this defense should be stricken.

**Andon's Twelfth Affirmative Defense**

Andon's Twelfth Affirmative Defense merely states "Plaintiff's claims are barred in whole, or in part by the doctrine of waiver."

This defense is also deemed to be vague and ambiguous and is merely directed to a conclusion of law completely devoid of any pleaded underlying facts.  As pleaded, this affirmative defense is incapable of providing any notice on which to predicate a pleading or defense.

Thus, the reasons given above are equally applicable to this affirmative defense.  The doctrine of waiver can cover a host of different acts, none of which have been identified or pleaded.

The Twelfth Affirmative Defense is therefore subject to being stricken for the reasons stated herein.

**The Thirteenth Affirmative Defense**

The Thirteenth Affirmative Defense merely pleads "Plaintiff's claims are barred in whole, or in part by the doctrine of estoppel."

8

Again, this affirmative defense is too vague and ambiguous in that the form of estoppel is not spelled out. It cannot be ascertained from the pleadings whether Andon is referring to a prosecution history estoppel, collateral estoppel, equitable estoppel, or some other form of estoppel. This Court can judicially notice that there are a number of different estoppel doctrines.

It is submitted that the Thirteenth Affirmative Defense is per se too vague, and should either be stricken or amended to render the affirmative defense more specific.

**As To The Fifteenth Affirmative Defense**

Andon's Fifteenth Affirmative Defense merely states that "Plaintiff's claims in whole or in part are barred by the doctrine of unclean hands."

Again, this defense is too vague and ambiguous, and merely states a conclusion of law. Andon has not specified any underlying facts in support of this defense. In the patent infringement context, "unclean hands" is akin to "fraud" on the U.S. Patent and Trademark Office in the procurement of the patent. As such, the defense of "fraud" or "unclean hands" must be specifically pleaded as required by Rule 9, Fed.R.Civ.P. See <u>Laitram Corp. v. OKI Electric Industry Co., Ltd.</u>,          ; 30 USPQ 2d 1527, 1533 (ED La 1994) and <u>Aslar, Inc. v. Structural Dynamics Research</u>

9

Corp., 36 USPQ 2d 1402, 1409, wherein a similar affirmative defense was stricken.

**Count II of Andon's Counterclaims Fails To State A Cause Of Action.**

The core of Andon's Count II of its counterclaims is that Centrix appropriated the designs of the dental brushes disclosed and claimed in the patents in suit, and that Mr. Newell, Andon's president, or Andon developed the designs for the dental brushes and the equipment to manufacture such brushes (Paragraphs 19, 22, 23, 24, 25, 26, 27, 28, 29 and 30 of Count II).

The actual facts are that Dr. Dragan and John Discko of Centrix, Inc. invented the dental brush in suit, and that the invention thereof occurred long before Andon was formed. The '803 patent application was initially filed in March 1989, almost a year before Andon came into existence and long before Centrix had any dealings with Mr. Newell. See attached Affidavits of John Discko and Mr. Robbins.

In fact, Centrix entered into a supply agreement with the Applicator Company on September 5, 1989, to supply Centrix with the patented brushes, long before Andon came into existence. Further, Centrix paid the Applicator Company for the necessary retooling of the Applicator Company's brush making machines in order to make the

Centrix patented dental brush, and which tooling was to remain Centrix's property.

It was only after the Applicator Company was known to be on the verge of bankruptcy in or about December 1989 or January 1990 that Mr. Newell became known to Centrix. In fact, Centrix was mainly the reason why Andon was organized. The Andon Brush Company was organized by Centrix, Mr. Gerard Robbins and Mr. Newell to succeed the Applicator Company as the supplier of the patented dental brushes that Centrix had commenced marketing in September or October of 1989. The foregoing facts are verified in the attached declarations of Mr. Discko and Mr. Robbins, which are incorporated herein by reference.

Accordingly, it is impossible for Andon and/or Robert Newell to claim any inventorship to any portion of the dental brushes disclosed and claimed in the patents in suit, nor did Andon or Mr. Newell invent any machine or process for making the patented dental brushes, as Andon purchased its brush making machine from F & W Tool Co. located in Brooklyn, New York, and that the expressed retooling of the Applicator Company necessary for making the patented brushes was the property of Centrix.

Andon had no dental customers of its own initially except for Centrix, and whatever dental customers Andon

11

later acquired were referred to it by Centrix, as Centrix was and is a one-third owner of Andon's issued shares of stock. In fact, the known dental customers Andon is currently selling the infringing brushes to, viz. Benco Dental and Reliance, are the former customers of Centrix.

Centrix did not copy or appropriate any confidential information relating to Andon's brush making process or machine. Centrix invested some $400,000.00 in a brush making machine which is nothing like Andon's $50,000.00 machine.

In view of the foregoing facts and as supplemented by the attached declarations and supporting exhibits attached thereto, it is submitted that Andon cannot plead any set of facts that will entitle it to any relief relative to the cause of action Andon attempted to plead in Count II.

Therefore, Count II should be dismissed.

In the event the Court is of the opinion that Count II is not dismissible, then Centrix requests that the Court order that Andon more specifically set forth the specific brush designs, trade secrets and/or confidential information that Centrix is alleged to have misappropriated, and when and how such information was allegedly appropriated, and further to identify the customers and potential customers of Andon's that Centrix

is alleged to have appropriated, and specifically what information relating to the parts and equipment Centrix allegedly appropriated, and when such acts of appropriation occurred.

**As To Count III**

Count III of Andon's counterclaim appears to be merely a restatement of the "core facts" alleged in Count II. Therefore, Count III is dismissible for the same reasons dictating the dismissal of Counts I and II. <u>Advanced Cardiovascular Systems, Inc. v. Sci Med Life Systems, Inc.</u>, supra.

**As To Andon's Count IV Of Its Counterclaim**

Count IV merely repeats the allegations of Count II and asserts that Centrix has been unjustly enriched. Count IV is fatally defective, as a claim of "unjust enrichment" suggests that there existed some form of an implied agreement between Centrix and Andon that had been breached to result in an alleged "unjust enrichment." Clearly, no facts have been pleaded to support any type of an implied agreement, either in fact or law and/or the breach thereof, whereby Centrix has been unjustly enriched.

Centrix merely issued purchase orders to Andon, which Andon was free to accept or reject. There was never any written or oral agreement from which one could imply any

13

type of an implied agreement.  As Andon cannot plead any set of facts to support any type of an implied agreement and/or any breach thereof, no claim of unjust enrichment can be properly made.

## C O N C L U S I O N

For the reasons set forth, and in further view of the applicable facts, declarations, exhibits and authorities cited, it is requested that this Motion be granted, dismissing Counts II, III and IV and striking the tenth, twelfth, thirteenth and fifteenth affirmative defenses.

                          Respectfully submitted,
                          **Fattibene & Fattibene**

By_____
   Arthur T. Fattibene, CT 06916
   Paul A. Fattibene, CT 12760
   Attorneys for Plaintiff,
   Centrix, Inc.
   2480 Post Road
   Southport, CT 06890
   Tel: 203-255-4400;
   Fax: 203-259-0033