```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
                      at Hartford


CENTRIX, INC.
            Plaintiff
                                        Civil Action No.
                                        3:03 CV 703 (CFD)
      v.


ANDON BRUSH COMPANY, INC.,

            Defendant
```

### Declaration of Gerald Robbins

I, Gerald Robbins hereby declare that I am personally knowledgeable of the facts and statements herein made, and if called to testify I would testify as follows:

1. I am currently self employed as an importer.

2. Prior to establishing my current business I was one of the principals and co-founders of the Andon Brush Company Inc. that was organized and incorporated as a Delaware Corporation on or about February 12, 1990.

3. Prior to being a co-founder of the Andon Brush Company Inc. in February 1990, I was employed by the Applicator Company from about 1982 to about January 1990. My function and duties at the Applicator Company were those of a sales manager.

4.   The Applicator Company was essentially a closely held family business that was started in 1936 by my uncle, Harry Robbins with two associated partners.  Subsequent to the organization of the Applicator Company my uncle bought out his two partners and my father, Murray Robbins, joined his brother, Harry Robbins, in the operation and management of the Applicator Company.

5.   Over the years the Applicator Company under the management of my uncle and father grew to become one of the leading and prominent manufacturers of various industrial and commercial applicators and brushes.

6.   Upon the death of my uncle and the retirement of my father, the management of the Applicator Company was conducted primarily by my cousin Eric Robbins who functioned as President of Applicator Company, and I carried on as Applicator's principal sales manager.

7.   On or about December 4, 1988 I received an unsolicited letter of inquiry dated December 2, 1988 from Centrix Inc. inquiring as to whether or not the Applicator Company could supply Centrix Inc. (Centrix) with a 6 inch brush Centrix contemplated marketing.  This unsolicited letter of inquiry is attached as Exhibit 1 hereto,

8.   Upon receipt of Centrix's initial inquiry of December 2, 1988, I called Centrix and requested additional

information as to the type of brush Centrix desired.  I spoke with a Mr. John J. Discko Jr. who I understand was Centrix's Vice President of Sales and Marketing and the person who made the inquiry of December 2, 1988. (Exhibit 1)

   9.  In response to my telephone inquiry I received a letter dated December 20, 1988 attached hereto as Exhibit 2 which included a prototype sample of the brush Centrix desired Applicator to make as well as Centrix's specifications for such brushes.

   10.  On December 29, 1988 I advised Centrix in a letter attached as Exhibit 3 that the Applicator Company could only manufacture a portion of this brush assembly that requested by Centrix.

   11.  I don't recall hearing anything further from Centrix until I received another inquiry from Mr. Discko in a letter dated May 3,1989 relating to a new design of the brush. (See attached Exhibit 4)

   12.  As a result of this May 3, 1989 communication (Exhibit 4) I recall that the Applicator Company President Eric Robbins and myself were visited by the principles of Centrix, Dr. William Dragan CEO of Centrix, John Discko and Melvin Drumm, President of Centrix to determine whether or not the Applicator Company could supply Centrix with the

specific brush Centrix desired to market. This meeting to my best recollection occurred in the latter part of May 1989 after the receipt of the May 3, 1989 letter, Exhibit 4.

13. The May 1989 meeting was the first time that the principles of the Applicator Company actually met with the principles of Centrix.

14. At the May 1989 meeting Centrix disclosed samples of the specific brush Centrix designed. The brush that Centrix designed was a dental brush that had a peculiar crimp or hinge which permitted a dentist to bend the brush tips to any selected angle and which Centrix intended to market under the brand name Benda® Brush.

15. Dr. Dragan of Centrix, Inc. demonstrated and discussed the various ways the brush could be made during the May 1989 meeting. At this time it was noted that the Applicator Company did not have the necessary machinery to fabricate the brush that Centrix designed, but that the Applicator Company would consider what modifications could be made to its existing machinery to make the brush designed by Centrix Inc.

16. The Applicator Company was advised by Centrix Inc. that a patent application had been filed in the U.S.

Patent office for the dental brush concept Centrix was inquiring about.

17. Robert Newell who was Applicator's Company's plant manager at the time and responsible for maintaining Applicator's machinery and equipment was not present at this May 1989 meeting.

18. On or about June 12, 1989 I called Mr. Discko by telephone to advise him that in order for the Applicator Company to make the newly proposed dental brush for Centrix, the Applicator Company's brush making machinery had to be retooled and slightly modified in order to make the proposed Centrix brush in the quantities that Centrix desired. I quoted that the necessary retooling and modifications to the existing Applicator Company's machines would cost approximately $12,000.00, and that a sample run of 700-800 brushes could then be made from 3.5 to 4 cents each.

19. Centrix approved the retooling and modification cost, and Centrix paid the Applicator Company the retooling and modification costs of $12,000.00.

20. On or about August 8, 1989 Applicator Company received Centrix's specifications (attached Exhibit 5) and Centrix's Benda® Brush Fact Sheet (attached Exhibit 6) for

making the Benda® Brush Centrix desired to market to the dental profession.

21. On or about September 5, 1989 Centrix and the Applicator Company executed a supply agreement which is attached hereto as Exhibit 7.

22. In about September or October 1989 the Applicator Company commenced supplying Centrix the dental brushes which Centrix commenced marketing under the brand name Benda® Brush.

23. Toward the end of the 1989 year the Applicator Company was having financial difficulties, and as a result thereof the IRS imposed a Tax Levy on the Applicator Company's receivables.

24. As the Applicator Company was heading for bankruptcy, my cousin terminated me on or about January 21, 1990.

25. Having some concern that the Applicator Company would not be able to supply Centrix with its requirements of the new Benda® brushes, which were being enthusiastically received by the dental professionals and aggressively marketed by Centrix, I advised Centrix of the impending bankruptcy of the Applicator Company, and of Centrix's real possibility of losing its source of supply for the Benda® Brush.

26. The impending bankruptcy of the Applicator Company resulted in discussions with Centrix about the possibility of Centrix joining Robert Newell and myself as partners in organizing a new company to continue as Centrix's source of supply for the new and seemingly very successful dental brush product.

27. After some discussions it was agreed that Centrix, Robert Newell and myself would organize and form a new company for making various types of applicators and to continue supplying Centrix with Centrix's newly introduced Benda® Brush.

28. Centrix, Robert Newell and myself agreed the new company be named the Andon Brush Company, Inc. and that the stock shares be equally divided between Centrix Inc. Robert Newell and myself.

29. On or about February 12, 1990, the Andon Brush Company was formed and operating, wherein Centrix, Robert Newell and myself became equal third owners of Andon stock.

30. One of the first acts of the Andon Brush Company was to purchase a brush making machine capable of supplying Centrix with the new dental Benda® Brush.  Such a machine was designed and purchased from F&W Tool in Brooklyn, New York using a Carlson brush machine head for the sum of $50,000.00.  As the delivery time for the machine was

critical, Centrix paid a premium of $5,000.00 for early delivery of the machine by F&W Tool.

31. As neither Robert Newell or myself had any management or financial experience, Centrix provided the management and financial experience during Andon's formative period while Mr. Newell and myself were primarily involved in the day to day operations of Andon Brush Company, Inc.

32. For ten (10) years Centrix was Andon Brush Company, Inc.'s major customer that accounted for more than one third of Andon Brush Company gross sales. Also during this period Andon was Centrix's exclusive supplier of the Centrix Benda® Brush line.

33. Throughout the ten (10) years Andon was supplying Centrix with dental brushes, I am not aware of any invention that was suggested or made by Mr. Newell that related in any way to the Centrix dental brushes that Andon was supplying to Centrix.

34. On or about February 2001, I sold my Andon shares, with Centrix's consent, to Robert Newell, and resigned from Andon Brush Company.

35. Prior to the sale of my Andon shares to Robert Newell, both Robert Newell and myself visited Centrix to discuss why Centrix's orders for dental brushes to Andon

seemed to be diminishing.  At this meeting Centrix advised Mr. Newell and myself that Andon's continuing increase of its brush prices to Centrix's rendered, Centrix's pricing for its brushes non competitive to those of its competitors. To reduce cost in order to remain competitive, Centrix had decided to manufacture its own brushes in house and had a machine made. On this visit Centrix showed Robert Newell and myself the brush making machinery Centrix had purchased to make its own Benda® brushes line in house.

36. Centrix brush making machine based on my inspection thereof was a modern, state of the art machine that looked nothing like Andon's brush machine.  Andon's machine was primitive in comparison to the Centrix brush making machine I saw.  The Centrix machine was capable of performing operations that could not possibly be performed by the Andon machine.

37. After Centrix ceased purchasing its dental brushes from Andon, Mr. Newell suggested to me that Andon should continue to make the Centrix dental brushes and market them under Andon's "Cobra" brush name. I advised Mr. Newell that Centrix has a patent for the dental brush, and that Andon could not sell the Centrix patented dental brushes to the dental profession without Centrix's consent.

38. Despite my advice to Mr. Newell not to sell the Centrix Benda® Brush to the dental profession without Centrix's consent, Andon, under a policy established by Robert Newell as President of Andon, on or about July 2000 commenced an extensive solicitation campaign, and began to solicit and call on all of the major dental dealers and suppliers for the purpose of selling to them the patented Centrix dental brush, with the full knowledge that Centrix had a patent thereon.  As a result of Andon's aggressive solicitation efforts, Andon did get a few sales for the Andon Cobra brush which is a copy of dental brushes Andon had been supplying to Centrix for some ten (10) years.

39. Andon knowingly and deliberately sold the Centrix type Benda® Brushes without Centrix's consent.


I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are true and that these statements were made with the knowledge that willful false statements are punishable by fine or imprisonment under Title 18 section 1001 of U.S. Code.

_____
Gerald Robbins

Dated:_____

Case 3:03-cv-00703-CFD    Document 23    Filed 11/26/2003    Page 11 of 11