```
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF CONNECTICUT
                            At Hartford
```

**CENTRIX, INC.**

        Plaintiff

    v.                              Civil Action No.
                                      3:03 CV 703 (CFD)

**ANDON BRUSH COMPANY, INC.**

        Defendant


**PLAINTIFF, CENTRIX, INC.'S, REPLY MEMORANDUM
TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF, CENTRIX, INC.'S, RULE 12 FED.R.CIV.P.MOTION
FOR MORE DEFINITE STATEMENT OR IN THE ALTERNATIVE TO STRIKE
AND/OR DISMISS DEFENDANT, ANDON BRUSH COMPANY, INC.'S,
COUNTERCLAIM COUNTS II, III AND IV FOR FAILURE TO STATE
A CAUSE OF ACTION FOR WHICH RELIEF MAY BE GRANTED**

                                      Arthur T. Fattibene, CT 06916
                                      Paul A. Fattibene, CT 12760
                                      Attorneys for Plaintiff,
                                      Centrix, Inc.
                                      2480 Post Road
                                      Southport, CT 06890
                                      Tel: 203-255-4400;
                                      Fax: 203-259-0033

**ORAL
HEARING
REQUESTED**

**NATURE OF PROCEEDINGS**

On or about November 25, 2003, Plaintiff, Centrix, Inc. (Centrix) filed a motion under Rule 12(b)(6), 12(e) and 12(f) to dismiss Defendant, Andon Brush Company, Inc.'s (Andon) Counterclaims Counts II, III and IV and to render a more definite statement or to strike Andon's Tenth, Twelfth, Thirteenth and Fifteenth Affirmative Defenses, together with a Supporting Memorandum, Declarations and Exhibits.

On February 2, 2004, Centrix was served with Andon's Opposing Memorandum, Declaration of Andon's counsel with attached exhibits, and a self-serving Declaration of Mr. Newell without any corroborating exhibits or documents.

This is Centrix's Reply Memorandum, which is being filed pursuant to D. Conn L. Civ. R. 7(d).

# **A R G U M E N T**

**I.  The Declaration of Mr. Newell, Andon's President, Filed in Support Of Andon's Memorandum Is Replete With Uncorroborated Self-Serving Allegations and Misrepresentations of Fact**

Andon's alleged Statement of Facts at pages 1 to 6 merely paraphrases the unsupported allegations reiterated in Mr. Newell's Declaration. Contrary to Andon's Statement of Facts at page 2 to the effect that Newell "worked with

1

Centrix in the invention and development of the brush at issue in this matter", this is nothing more than a figment of Mr. Newell's imagination.  This becomes apparent when it is noted that Mr. Gerald Robbins, whose family owned and operated the Applicator Company (paragraphs 3-6 of Robbins' Declaration), advised Centrix on December 29, 1988, that the Applicator Company could not manufacture the brush Centrix wanted produced (Exhibit 3 attached to Robbins' Declaration).  As a result, there was no further communications between Centrix and the Applicator Company <u>until May 3, 1989</u> (paragraph 12 of Robins' Declaration and attached Exhibit 4).  See also Mr. Discko's attached Rebuttal Declaration.  This reopening of communications finally led to the principals of Centrix having a face to face meeting with Gerald Robbins and his cousin, Eric Robbins, which eventually culminated into the Supply Agreement of September 20, 1989.  Up to this point in time, Centrix had no contact or communications with Mr. Newell.

    Important to the issue of inventorship is the undisputed fact that the <u>application for the '803 patent in suit was filed on March 20, 1989, many months before the May 1989 meeting and well before the Applicator Company was tooled up to supply Centrix with the '803 patented brushes, and long before Mr. Newell came into the picture</u>.

2

The undisputed facts evidenced by supporting documents is that between the May 1989 meeting to September 5, 1989, when Centrix executed a supply agreement with the Applicator Company (Exhibit 7 attached to Robbins Declaration), the Applicator Company was retooling its brush making machine to make the Centrix '803 patented brush construction.  In fact, as noted in Gerald Robbins Declaration, the cost for retooling Applicator Company's brush making machines was $12,000.00, which Centrix paid for and which retooling became owned by Centrix, as noted in paragraph 7 of the Supply Agreement (Exhibit 7, Robbins Declaration).

As Mr. Newell was employed by the Applicator Company to run and operate Applicator Company's brush making machines, Mr. Newell's participation, if any, consisted of merely retooling the Applicator Company's machine with the tooling paid for and owned by Centrix so that Applicator Company could supply Centrix with brushes made to Centrix's specifications.  Mr. Newell certainly did not invent the brush construction which Applicator Company supplied to Centrix.

**II.  The Applicable Law of Inventorship**

The law pertaining to inventorship is clear.  For a case in point, reference is made to <u>Acromed Corp. v. Sofamor Danek Group, Inc.</u>,    F.3d   ; 59 USPQ 2d 1130 (Fed Cir 2001) noting that inventorship is a question of law, citing <u>Ethicon, Inc. v. U.S. Surgical Corp.</u>, 135 F.3d 1456, 1460; 45 USPQ 2d 1545, 1547 (Fed Cir 1998).  In <u>Acromed</u>, supra, it was noted that under the presumption of validity which is accorded to a patent under 35 USC 282, each such patent also receives the presumption that its named inventors are the true and only inventors.  Inventorship is a question of who actually invented the <u>subject matter claimed in the patent</u>.  (Emphasis added).

<u>Conception is the touchstone of inventorship</u>.  Thus, a person claiming to be a joint inventor must have contributed to the <u>conception of the invention</u>.  To prove that contribution, the purported inventor must provide corroborating evidence of any asserted contribution to the conception.  Such proof must be clear and convincing.  Mere testimony of a purported inventor repeating the facts surrounding the alleged claim of derivation cannot, standing alone, rise to the level of clear and convincing.

In the case at bar, Mr. Newell's declaration and argument of his counsel are totally devoid of any

4

corroborating evidence.  Also, it should be noted that no amount of discovery can possibly establish that Mr. Newell made any contribution to the conception of the invention relating to the '803 patent, or contributed to the invention <u>when it is noted that the '803 patent was filed on March 20, 1989, long before the inventors, Dr. Dragan and John Discko, Jr., learned of Mr. Newell</u>, and vice versa.

    Merely because Mr. Newell, as Applicator's plant manager, may have participated in retrofitting Applicator's brush making machine at some point in time between May 1989 and September 5, 1989, with the tooling paid for and owned by Centrix, does not make Mr. Newell the inventor of the '803 patented brushes, per se. <u>Acromed</u>, supra.  <u>The Barbed Wire Patent</u>, 143 US 275 (US 1891) emphasizes that mere uncorroborated testimony is grossly deficient in any determination of inventorship.  In the <u>Barbed Wire</u> case, supra, the uncorroborated testimony of at least twenty-four witnesses was held to be insufficient.

    The core issue of Andon's Count II appears to be one of inventorship.  Based upon the undisputable record before this Court, there can be absolutely no doubt that Andon cannot prove that Mr. Newell's claim of inventorship can be established when the undeniable evidence shows that the

5

application for the '803 patent was filed long before Mr. Newell came into the picture.  No amount of discovery can prove otherwise.  In view of the Declaration of Mr. Robbins and John Discko's Declarations and the exhibits attached thereto, it is clear that the Court cannot accept the allegations as alleged in Count II as true.  Such being the case, Count II is fatally flawed as a matter of law and is therefore subject to dismissal.

Counts III and IV, which are predicated largely on the allegations put forth in Count II, must also be fatally flawed as a matter of law.

### III.  The Declaration of Kenneth L. Winters

The Declaration of Andon's counsel of record in support of Andon's Memorandum In Opposition is equally devoid of any corroborating evidence to establish Mr. Newell as an inventor of the patent in suit.  Mr. Winters' Declaration merely pleads on behalf of Andon, the need for an opportunity to discover into the issue of inventorship (paragraph 9).  All of the discovery in the world cannot establish that Mr. Newell is an inventor of the '803 patent <u>when the application for the '803 patent was filed long before Dr. Dragan and John Discko, the co-inventors of the '803 patent, learned of and/or became aware of Mr. Newell.</u>

6

Andon's legal arguments set forth at pages 14 and 15 of its Opposing Memorandum, in relying upon the prosecution history of the '803 patent to evidence Mr. Newell's alleged claim of inventorship, is totally misplaced when it is noted that the '803 application was filed long before Dr. Dragan and Mr. Discko knew that Mr. Newell even existed, and vice versa.  The filing date of the '803 application fixes the date when the invention is disclosed to the U.S. Patent and Trademark Office, and not when the claims are amended.  Critical to inventorship is the original conception and disclosure thereof, and not when the claims of a patent application may be amended or redrafted after the application has been filed.  Andon's argument based upon the date as to when claims of a patent application were made to establish inventorship is grossly illogical, irrational and misplaced.  <u>Acromed</u>, supra; <u>The Barbed Wire Case</u>, supra.

As noted in <u>Advance Cardiovascular Systems v. Sci Med Life Systems</u>,            ; 26 USPQ 2d 1038 (Fed Cir 1993),

> "The purpose of the rule (Rule 12(b)(6) Fed.R.Civ.P.) is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus spare the litigants the burden of unnecessary pretrial and trial activity" citing Neitzke v. Williams, 490 US 319, 326-27 (1989).

7

Mr. Newell's claim of inventorship, as urged in Andon's Count II et seq., is fatally flawed for the reasons stated herein. It is inconceivable how Mr. Newell can claim any inventorship to an invention which was filed by Dr. Dragan and John Discko in the United States Patent & Trademark Office before Mr. Newell became aware of the existence of either Dr. Dragan and/or John Discko, the inventors of the '803 patent in suit.

In <u>Fiers v. Revel</u>, 984 F.2d 1164; 25 USPQ 2d 1601, 1604 (Fed Cir 1993), the Court noted that "Conception is a question of law." Since conception is a legal issue, this Court on the record before it, can readily decide this legal issue. It is inconceivable that some thirteen (13) years after the granting of the '803 patent in suit and only after Andon is charged with infringement of the '803 patent, Andon seeks to assert for the first time, in a totally uncorroborated and deceptive declaration, a claim of inventorship by Andon's president, Mr. Newell, merely to prolong the inevitable conclusion. If permitted, then any accused infringer can lay claims of inventorship to any patent when charged with infringement simply by filing a declaration or affidavit asserting totally unfounded and uncorroborated allegations of inventorship of the asserted

8

patent. Reference is made to Rule 1, Fed. R. Civ. P. and the Supreme Court, Barbed Wire case, supra.

**C O N C L U S I O N**

For the reasons stated and in view of the applicable law cited, it is requested that the Court grant Centrix's Motion.

                        Respectfully submitted,
                        **Fattibene & Fattibene**

                        By_____
                           Arthur T. Fattibene, CT 06916
                           Paul A. Fattibene, CT 12760
                           Attorneys for Plaintiff,
                           Centrix, Inc.
                           2480 Post Road
                           Southport, CT 06890
                           Tel: 203-255-4400;
                           Fax: 203-259-0033