**United States District Court**
**District of Connecticut**
**at Hartford**

CENTRIX, INC.,
        Plaintiff

                              Civil Action No.
                              3:03 CV 703 (CFD)

   v.

ANDON BRUSH COMPANY, INC.,
        Defendant

### REBUTTAL DECLARATION OF JOHN J. DISCKO, JR.

I, John J. Discko Jr. declare that I am personally knowledgeable of the facts and statements made herein and if called to testify, I would so testify.

1. I am one of the named co-inventors of the patents in suit in the above identified matte.

2. I have read the Declaration of Robert L. Newell filed in support of Andon's Memorandum in Opposition to Centrix' Rule 12 Motion filed in this matter.

3. Contrary to paragraph 4 of Mr. Newell's Declaration, Centrix did not contact the Applicator Company "to develop a small, disposable bendable brush" … "having a small diameter solid molded handle" capable of being bent at the bristle end.

4. Dr. Dragan and myself had, before December 2, 1988, already conceived and produced several prototype

1

samples of the invention disclosed and claimed in the '803 patent in suit that comprised a brush having a hollow or tubular handle having a bore extending therethrough.

5.  On December 2, 1988, I contacted the Applicator Company, as well as other brush making companies, to seek out a supplier or manufacturer capable of making proposed new Centrix Bendable brush according to our invention and to Centrix's specifications.  In addition to the Applicator Company (Exhibit 7 of my initial declaration), I contacted National Novelty Brush Co. (attached Exhibit 25); Anchor Brush Co. (Exhibit 26); and Geka Brush Corp. (Exhibit 27).  In each inquiry, I specified that the handle must be hollow and I provided a prototype sample of what Centrix desired.

6.  On December 8, 1988, Dr. Dragan and I commenced submitting patent disclosures to Centrix's patent counsel, describing and illustrating various embodiments of our invention in preparation of filing a patent application thereon, (Exhibits 2, 3, 4, 5 and 6 attached to my initial Declaration), together with written disclosure to Centrix's patent counsel.  We also submitted to Centrix's patent counsel actual physical embodiments of the invention, including the embodiment of the invention having a hollow or tubular handle throughout the length thereof, which was

2

provided with a flattened portion adjacent the brush end as is depicted in Fig. 5 of the '803 patent.

7. Mr. Newell's allegations of paragraph 8 of his Declaration appear to be intentionally deceptive. My letter of December 2, 1988, which was my first contact with the Applicator Company, expressly stated that Centrix is "seeking a supplier/manufacturer for a hollow handle plastic brush, similar to the attached sample." Applicator Company was at all times aware that Centrix's brush required a hollow handle.

8. Contrary to Mr. Newell's allegations of paragraph 9 of his Declaration, the sample submitted to the Applicator Company was a hand constructed prototype of the invention made from available material. The letter of December 20, 1988 (Exhibit 8 attached to my initial Declaration) expressly noted the sample was a prototype and that the ideal would be to mount "the brush filaments directly into the handle/tube." (Emphasis added).

9. The allegations made by Mr. Newell in paragraph 10 of his Declaration are not factual. Mr. Newell did not recommend that an extruded, hollow handle with a bore was the appropriate way to manufacture the handle for the brush we invented. The fact is Centrix's specification to Applicator Company required a hollow handle having a bore

3

therethrough.  My letter to Applicator Company on December 20, 1988 (Exhibit 8 of my initial Declaration), clearly specified (1) Brush handle 5" long, made of clear 3/16" OD CAB (cellulose acetate butyrate) <u>tubing</u>.  <u>Tubing</u> can be obtained through any plastic extruder in 5" length or in "bulk" lengths; cost approx $55 per 100 ft. (2) A ½ "pinch" just under the brush head as per sample, allowing the user to bend the brush to a desired angle. (Emphasis added).

My correspondence to the Applicator Company is clear and unambiguous.  Centrix wanted the Applicator Company to make the new brush to Centrix's specifications, and not to reinvent the brush Dr. Dragan and I had already invented.

10.  Mr. Newell's allegation of paragraph 11 of his Declaration is not supported by the evidence.  On December 29, 1988, the Applicator Company advised that it could not make the brush Centrix specified (Exhibit 9 of my initial Declaration).  Between December 29, 1988 (Exhibit 9 of my initial Declaration) and May 3, 1989 (Exhibit 11 attached to my initial Declaration), I am not aware of any communication or meeting that occurred during this period between Centrix and the Applicator Company.  On May 3, 1989, I again made contact with the Applicator Company concerning Centrix's bendable brush invention.  It was this contact that resulted in the parties meeting face to face

4

to determine whether the Applicator Company could supply Centrix with a bendable brush according to Centrix's specifications; which eventually resulted in the consummation of a Supply Agreement of September 5, 1989. (Exhibit 14 attached to my initial Declaration).

11.   Mr. Newell's allegations set forth in paragraph 13 neglect to mention that the document (Exhibit 1 of my initial Declaration) depicts a prototype brush having a handle formed as a hollow tube with a bore running continuously therethrough.

12.   Mr. Newell's allegations of paragraphs 13, 14, 15 and 16 implying that the Centrix brush invention did not include a brush handle "with a hollow tube with a bore running continuously therethrough", to imply that this was Mr. Newell's idea, ignores completely Centrix's initial request of December 2, 1988 (Exhibit 7 of my initial Declaration) to Applicator Company, wherein I specified Centrix was seeking a supplier "<u>for a hollow handled plastic brush, similar to the sample attached</u>."  (Emphasis added).

13.   The allegations recited in paragraph 17 of Mr. Newell's Declaration do not constitute conception of the invention of the dental brush that was conceived jointly by Dr. Dragan and myself.  The efforts described in paragraph

5

17 of Mr. Newell's Declaration comprise nothing more than that of an ordinary skilled mechanic knowledgeable of the brush making art. Any reasonably skilled mechanic can make the brush once the invention is disclosed. Furthermore, the forming or form of the crimp is neither a trade secret nor proprietary in nature once a brush having such crimp is rendered publicly available.

14. To further evidence Mr. Newell's misrepresentation of facts, in paragraph 20 of his Declaration, Mr. Newell states that Dr. Dragan resigned as a Board member of Andon in or about the year 2000. The fact is that Dr. Dragan resigned as a Director on December 22, 1997. See attached Exhibit 28.

15. Mr. Newell's allegations of inventorship are totally negated by the uncontrovered evidence attached to my respective Declarations.

16. Between 1989 through to the year 2000 that Andon was supplying Centrix with the '803 patented brushes, I would disclose, at regular intervals, other new concepts to expand Centrix's line of brushes and related products. See attached Exhibits 29 to 36.

17. Andon, at all times, functioned as a supplier of brushes made to Centrix's specifications, and nothing more.

6

18. Significantly, during the approximately ten (10) years that Andon was supplying Centrix, Mr. Newell was personally aware that the Centrix brush was patented, and during this period Mr. Newell never alleged inventorship to the brush invention.

I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are true and that these statements were made with the knowledge that willful false statements are punishable by fine or imprisonment under Title 18 section 1001 of U.S. Code.

							_____
							   John J. Discko, Jr.

							_____
							        (Date)