UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CENTRIX, INC., | : |
| Plaintiff, | : Civil Action No. 3:03 CV 703 (CFD) |
| v. | : |
| ANDON BRUSH COMPANY, INC., | : |
| Defendant. | : JANUARY 30, 2004 |

**DEFENDANT, ANDON BRUSH COMPANY, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF, CENTRIX INC.'S RULE 12 MOTION FOR MORE DEFINITE STATEMENT OR IN THE ALTERNATIVE TO STRIKE AND/OR TO DISMISS COUNTERCLAIMS COUNTS II, III, AND IV FOR FAILURE TO STATE A CAUSE OF ACTION**

Defendant Andon Brush Company, Inc., respectfully submits this Memorandum In Opposition To Plaintiff, Centrix Inc.'s Rule 12 Motion For More Definite Statement Or In The Alternative To Strike And/Or To Dismiss Counterclaims Counts II, III And IV For Failure To State A Cause Of Action. For the reasons set forth below, the motion should be denied.

**STATEMENT OF FACTS**

This is an action in which the plaintiff, Centrix Inc. ("Centrix") alleges infringement of two U.S. Patents relating to a form of dental brush. One patent is a utility patent, the other is a design patent. Centrix also asserts related claims of unfair competition. The defendant, Andon Brush Company, Inc. ("Andon") denies infringement of the patents, challenges the validity of the

1

patents on a number of grounds, and asserts counterclaims for a declaratory judgment of invalidity, unenforceability, and non-infringement (Count I), for misappropriation of trade secrets and confidential information (Count II), for interference with prospective economic advantage (Count III), and for unjust enrichment (Count IV). See, Exhibit A to Declaration of Kenneth L. Winters.

The parties to this action have had business relations in the past. Robert Newell ("Newell"), a shareholder and officer of Andon Brush Company, Inc. ("Andon"), had been employed for a number of years by The Applicator Brush Company, another company in the brush manufacturing industry. Declaration of Robert L. Newell ("Newell Declaration") at ¶ 3. In or about December 1988, Centrix had approached The Applicator Brush Company seeking a supplier of brushes. Newell Declaration at ¶ 4.

In his relationship with The Applicator Brush Company, Newell became acquainted with Centrix, Inc. and worked with Centrix in the invention and development of the brush at issue in this matter. However, rather just being requested to supply existing straight brushes to Centrix, The Applicator Brush Company was asked to work on developing a bendable brush that was desired by Centrix, and Newell was assigned to perform this work. Newell Declaration at ¶ 4. Newell worked on developing a mass-producable bendable brush from December 1988 and into the spring of 1989. Thereafter, he continued to contribute improvements to the bendable brush.

The initial type of bendable brush that was mentioned to Newell at that time was a molded solid handled brush that could be bent near the bristle end of the brush handle. The bending mechanism suggested by Centrix involved a thinning of the solid brush handle at the bending point. Mr. Robbins of The Applicator Company also suggested to Newell that the use of

2

a wire co-extruded in the handle might also permit a bending of the handle. Newell Declaration at ¶ 4.

Being experienced in the practicalities of manufacturing brushes in commercial quantities on an economical basis, Newell and others at The Applicator Company recognized that the use of brush handles with embedded wires would be more costly to produce than other potential types of handles. Newell Declaration at ¶ 6. In particular, a handle that consisted of a completely hollow tube could be rapidly and cheaply manufactured by means of extruding an appropriate plastic and cutting the extruded plastic to the desired length. Newell Declaration at ¶ 10. Thereafter, the bristles could be inserted into the brush, and a crimping process could be applied to the hollow tube handle to enable the bristle head to be bent.

The crimping process referenced in documents relied upon by Centrix appear to have been made by manually crimping the brush handle with pliers. Such a labor intensive process would have been cost prohibitive if the bendable brushes were to be mass marketed. The use of a hollow tube handle, however, complicated the crimping process. If the crimping process did not make the crimp deep enough into the handle, the handle would not bend as desired. On the other hand, if the crimping process made the crimp too deep into the handle, or at too sharp an angle, it would tend to cut through the walls of the hollow handle. Newell Declaration at ¶ 12. As a result, Newell experimented with varying crimping depths, pressures, and angles, and modified the machinery to enable the making of a workable crimp in a production setting. The details of how the crimp was made was not disclosed to the industry, but remained confidential information of Newell, the Application Brush Company, and thereafter Andon. Newell Declaration at ¶ 17.

The Applicator Brush Company found itself in financial difficulty in latter half of 1989. Shortly after The Applicator Brush Company ceased its operations, Andon was formed. There were three equal shareholders of Andon: Newell, Centrix, and another individual (Mr. Gerald Robbins). Andon was formed in 1990 for the purpose of, inter alia, manufacturing brushes for Centrix to sell in the dental supply industry. The shareholders has agreed that Newell and Mr. Robbins would be responsible for the manufacture of the bendable brushes, and that Centrix would be responsible for the marketing of the bendable brushes. Newell Declaration at ¶ 18. Newell subsequently acquired ownership of Mr. Robbin's interest in Andon.

Centrix is still a one-third shareholder of Andon. Employees, officers, and co-owners of Centrix have been on the board of directors of Andon over the years. At times, a employee of Centrix has served as an officer of Andon. As a result of that close relationship, Centrix received in confidence information of Andon regarding the vendors of machinery for the manufacturing of the brushes and the equipment that was needed, the part numbers of the materials used in manufacturing the bendable brushes for Centrix, the confidential details of the manner in which the crimp is applied the hollow tube brush handle, the cost and pricing structure of Andon's dental brushes, and the customers and potential customers of Andon's dental brushes. Newell Declaration at ¶ 20.

For many years, Andon had successfully manufactured the dental brushes for Centrix. However, Centrix used its knowledge of Andon's cost structure to repeatedly demand lower prices for the bendable brushes, which in turn would have enabled Centrix to essentially receive for its self most of the profit from the manufacture and sale of the bendable brushes, even though it was only a one-third shareholder in Andon. Newell Declaration at ¶ 21.

4

Centrix requested that Andon develop a manufacturing line for a bendable brush with a bendable bristle head at both ends of the handle. Andon informed Centrix of what it would cost for making such brushes in light of the additional machinery that would need to be obtained and the need to configure a production line for such a brush. Centrix, however, decided not to have Andon set up production for such a brush. Instead, Centrix had such a brush produced by another company. In doing so, Andon believes that Centrix has used Andon's confidential information concerning the equipment necessary to manufacture the brushes, the sources of that equipment, the customers and potential customers of Andon, and the costs and pricing structure of Andon. Newell Declaration at ¶ 22. Andon has asserted a counterclaim for that misappropriation.

In or about March 1989, an application for a patent for the dental brush was filed. The application named only John Discko, Jr. and William Dragan (shareholders of Centrix) as the inventors notwithstanding that Newell had worked with Discko to invent the brush. The patent application was prosecuted by Arthur Fattibene, who is also counsel for Centrix in this matter. The resulting utility patent, United States Patent No. 5,001,803 (the '803 Patent) consists of one independent claim and two dependent claims. The independent claim is, in layman's terms, for a disposable dental brush having a tubular plastic handle "having a continuous, uninterrupted bore extending therethrough", "the bore opening to at least one of said handle," a tuft of bristles inserted into the bore, means for securing the bristles, and the handle having a hinged section adjacent to the tuft of bristles formed by a displacement of the handle walls to form a flattened portion. See, Exhibit 10 to the Declaration of Discko. In or about March 1990, Centrix filed an application for a design patent. The resulting design patent, United States Patent Des. 329,142 (the '142 Patent) prominently features the hollow tube with a longitudinal ridges for gripping that

5

had existed prior to the invention of the bendable brushes that are the subject of this action, and the crimp whose manufacture was developed by Newell for such a hollow tube handle. Notwithstanding Newell's development of the crimp shown on the '142 patent, the patent also fails to identify him as an inventor of that design. See, Declaration of Kenneth L. Winters at Exhibit B.

## ARGUMENT

### POINT I

### A MOTION FOR A MORE DEFINITE STATEMENT IS A DISFAVORED MOTION AND SHOULD BE DENIED WITH RESPECT TO THE AFFIRMATIVE DEFENSES PLEADED BY ANDON

Fed. R. Civ. P. 12(e) provides in relevant part:

> (e) Motion for More Definite Statement. If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. . . .

It is well settled that motions for more definite statements are disfavored. See, e.g., MTV Networks v. Curry, 867 F. Supp. 202, 207-208 (S.D.N.Y. 1994); Bazal v Belford Trucking Co., Inc., 442 F. Supp. 1089, 1101 (D. Fla. 1977); Weiszman v. Kirkland and Ellis, 732 F. Supp. 1540, 1549 (D. Colo. 1990). 2 Moore's Federal Practice § 12.36[1] discusses the disfavored nature of a motion for a more definite statement as follows:

> The motion for a more definite statement is not favored because pleadings are to be construed liberally to do substantial justice. So, although they come within the court's discretion, courts grant the motions sparingly.
>
> Rule 12(e)'s standard is plainly designed to strike at unintelligibility rather than lack of detail. Courts frown on a litigant's use of the motion as a "shotgun tactic" to substitute for

6

> discovery, or as a dilatory tactic to postpone filing an answer. In the presence of proper, although general, allegations, the motion will usually be denied on the grounds that discovery is the more appropriate vehicle for obtaining the detailed information. [footnotes omitted]

Indeed, it has been stated that if a party can obtain the missing detail through discovery, a motion for a more definite statement should be denied. Davison ex rel Sims v. Santa Barbara High School District, 48 F.Supp.2d 1225, 1228 (C.D. Cal. 1998). The aim of Rule 12(e) is to remedy unintelligible pleadings, not to correct for lack of detail. Kelly v. L.L. Cool J., 145 F.R.D. 32, 35 (S.D.N.Y. 1992), affirmed 23 F.3d 398 (2d Cir. 1994), cert. denied, 513 U.S. 950, 115 S.Ct. 365, 130 L.Ed.2d 318 (1994).

Moreover, a prerequisite for a motion for a more definite statement is that the matter to which the motion is directed be "a pleading to which a responsive pleading is permitted." Fed. R. Civ. P. 12(e). 2 Moore's Federal Practice, § 12.36[6]. A party's affirmative defenses are *not* pleadings to which a responsive pleading is permitted, and hence are not subject to a motion for a more definite statement. Citizens Trust Co. v. New England Dredge & Dock Co., 260 F. Supp. 800, 801 (D. Conn. 1966).

In the present motion, Centrix has moved for a more definite statement with respect to the Tenth Affirmative Defense, the Twelfth Affirmative Defense, the Thirteenth Affirmative Defense, and the Fifteenth Affirmative Defense. These are all affirmative defense, to which no response by Centrix is required. Hence, they are not properly the subject of a motion for a more definite statement in the first instance. Thus, the motion should be denied with respect to these defenses. Citizens Trust Co., supra.

Moreover, the very matter of which Centrix complains are matters which are readily the subject of discovery. Centrix complains that the Tenth Affirmative Defense does not adequately identify the alleged patent misuse to Centrix's satisfaction, that the Twelfth Affirmative Defense

7

does not adequately identify the waiver to Centrix's satisfaction, that the Thirteen Affirmative Defense does not adequately identify the estoppel to Centrix's satisfaction, and that the Fifteenth Separate Defense does not adequately identify the unclean hands to Centrix's satisfaction. However, all of these defenses are ones as to which Centrix is not required to file a responsive pleading and the alleged lack of specificity of details can be the subject of discovery by Centrix. Thus, the motion for a more definite statement should be denied and Centrix relegated to its use of discovery to prepare to meet these defenses. See, Davison ex rel Sims v. Santa Barbara High School District, 48 F.Supp.2d 1225 (C.D. Cal. 1998).

## POINT II

## THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MUST BE DENIED

In Plummer v. Gordon, 193 F.Supp.2d 460, 462 (D. Conn. 2002), the court addressed the standards governing a motion to dismiss for failure to state a claim as follows:

> A motion to dismiss filed pursuant to Rule 12(b)(6) can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Todd v. Exxon Corp., 275 F.3d 191, 197-98 (2d Cir. 2001) In considering such a motion, the court must accept the factual allegations alleged in the complaint as true and all inferences must be drawn in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); Stephenson v. Dow Chemical Co., 273 F.3d 249, 256 (2d Cir. 2001). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

>  entitled to offer evidence to support the claims." Id. (quotation omitted). "[B]ald assertions and conclusions of law will not suffice to state a claim ...." Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000) (citations omitted).

A motion to dismiss is ordinarily disfavored, and any doubts should be resolved in favor of the party whose pleading is the subject of the motion. Williams v. Gorton, 529 F.2d 668, 672 (9th Cir. 1976). Such a motion should rarely be granted. Walsh v. McGee, 918 F.Supp. 107, 112 (S.D.N.Y. 1996)

In assessing a pleading under a motion to dismiss, the pleading need not be extensively detailed. "A complaint need not set out the facts in detail. The Federal Rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), Fed.R.Civ.P." Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc., 253 F.Supp.2d 262, 267 (D.Conn. 2003). Thus, if the pleading complies with the liberal notice provision of Fed. R. Civ. P. 8 with respect to a short and plain statement of the claim, a motion to dismiss for failure to state a claim should be denied.

Under these standards, Centrix's motion to dismiss must be denied.

**Count II of the Counterclaim:**

Count II of Andon's counterclaim is a claim for misappropriation of trade secrets and confidential information. It alleges that Newell has performed extensive research and development with respect to dental brushes and the equipment used to manufacture them; and that Andon and Newell developed information regarding the identity and costs of vendors who were able to provide specific parts and equipment used in the making of dental brushes. Andon and Newell also developed a list of customers and potential customers for Andon's dental brushes, as well as specific pricing information for these customers. Count II of Counterclaim at ¶ 12. That confidential information, including knowledge of the processes and equipment used

to produce products, was not generally available to Andon's competitors, and Andon undertook reasonable efforts to preserve and maintain the secrecy of that information. Count II of Counterclaim at ¶ 13-14.

Centrix was a one-third shareholder of Andon, and an officer of Centrix has been on the Board of Directors of Andon for many years. Count II of Counterclaim at ¶¶ 16-17. As a result of that relationship, Andon disclosed to Centrix, in confidence, its confidential information. Count II of Counterclaim at ¶ 19. The specific information so disclosed was related to (1) the design of dental brushes and related products, (2) the processes and equipment used to manufacture such products (including but not limited to the design and rate of production of certain equipment), (3) the identity and costs of particular vendors who supplied specific parts and equipment for the manufacture of dental brushes, (4) the manufacturing costs and pricing structure of Andon's dental brushes, (5) the identity of Andon's customers and potential customers, (6) specific pricing information regarding the customers, and (7) other information. Count II of Counterclaim at ¶ 19. It is also believed that Centrix obtained Andon's confidential information when it raided Andon's files under the guise of conducting an audit. Count II of Counterclaims at ¶ 20.

Count II further alleges that the president of Andon, Newell, was an inventor of the subject matter of the patents in suit, and that Centrix filed applications for those patents as well as another patent without naming Newell as an inventor. Count II of Counterclaim at ¶¶ 22-26. Thus, paragraph 27 of the Count II of the Counterclaim alleges that Centrix used its knowledge of Andon's confidential information to claim exclusive rights to which it was not entitled.

Centrix used the confidential information it had obtained from Andon to obtain from Andon's vendors the specific parts used by Andon to manufacture dental brushes, and used that

information to manufacture and sell dental brushes itself rather than having Andon manufacture the brushes. Centrix also disclosed that information to a competitor of Andon in the brush making industry and hired that competitor to manufacture dental brushes for Centrix.

Paragraph 32 of Count II of the Counterclaim alleges: "The unauthorized disclosure of Andon's Confidential Information to obtain patents, the unauthorized taking of Andon's documents containing Andon Confidential Information, and the unauthorized use and disclosure of Andon Confidential Information in Centrix's manufacture and sale of dental brushes, constitutes a misappropriation of Andon's trade secrets and Confidential Information, as well as unfair competition."

The above allegation sufficiently state a cause of action for misappropriation of trade secrets and confidential information. See, Sun Dial Corp. v. Rideout, 16 N.J. 252, 257-58, 108 A.2d 442 (1954); Elm City Cheese Co., Inc. v. Federico, 251 Conn. 59, 69-70, 752 A.2d 1037 (Conn. 1999); C.G.S.A. § 35-51. Accordingly, the motion to dismiss for failure to state a claim must be denied under the standards applicable to such a motion.

**Count III of the Counterclaim:**

Count III of the Counterclaim incorporates the allegations of Count II of the Counterclaim. Count III of Counterclaim at ¶ 35. Count III includes the additional allegations that Centrix was aware of the prospective economic advantage that was available to Andon with respect to Andon's relationships with its customers and vendors, and Andon's patent rights, and Andon's confidential information. Count III of Counterclaim at ¶¶ 36-37. Centrix willfully, wantonly, maliciously and with intent to injure Andon interfered with Andon's prospective economic advantage.

In support of it motion to dismiss, Centrix merely states that Count III should be dismissed for the same reasons as Count II should be dismissed. However, as shown above, Count II withstands a motion to dismiss under the applicable standards. Count III also includes the appropriate allegations for a claim of interference with prospective economic advantage. See, Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 563 A.2d 31 (N.J. 1989); Harry A. Finman & Son, Inc. v. Connecticut Truck & Trailer Service Co., 169 Conn. 407, 363 A.2d 86 (Conn. 1975); Wellington Systems, Inc. v. Redding Group, Inc., 49 Conn.App. 152, 714 A.2d 21 (Conn. App. 1998), cert. denied, 247 Conn. 905, 720 A.2d 516 (Conn. 1998). Accordingly, the motion to dismiss for failure to state a claim must be denied with respect to Count III of the Counterclaim.

**Count IV of the Counterclaim:**

Andon's Count IV of the Counterclaim repeats the allegations of the previous Counts of the Counterclaim and alleges that the actions of Centrix constitute unjust enrichment. In support of its motion, Centrix contends that no implied agreement had been pleaded whereby Centrix could be unjustly enriched.

However, the wrongful taking of another's idea or secret information for one's own financial gain gives rise to an enrichment which is unjust and remediable. See, Flemming v. Ronson Corp., 107 N.J.Super. 311, 258 A.2d 153, 164 U.S.P.Q. 369 (Law Div. 1969), affirmed, 114 N.J.Super. 221, 275 A.2d 759 (App. Div. 1971). Such has been alleged in the present matter. Moreover, as stated in National CSS, Inc. v. City of Stamford, 195 Conn. 587, 597, 489 A.2d 1034 (1985), "[t]he right of recovery for unjust enrichment is equitable, 'its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff.' " Similarly, as stated in Hirsch v.

Travelers Ins. Co., 134 N.J.Super. 466, 470, 341 A.2d 691 (App. Div. 1975), "All that is required to establish a constructive trust is a finding that there was a wrongful act resulting in the transfer of property and consequent unjust enrichment of another." Here, Centrix's misappropriation of Andon's trade secrets and confidential information as alleged in the Counterclaims, coupled with the retention of that benefit without compensating Andon, states a claim of unjust enrichment.

### The Motion to Dismiss Should Not be Treated as a Motion for Summary Judgment:

As previously noted, a motion to dismiss under Fed. R. Civ. P 12 is to be determined by accepting the allegations of the pleading as true and drawing all inferences in favor of the pleading party. Rule 12(b) allows the Court to exclude matters outside the pleadings. If matters outside the pleading are considered, the motion must then be treated a motion for summary judgment.

With respect to whether or not a court should consider matters outside the pleadings on a motion under Rule 12(b)(6), 2 Moore's Federal Practice, § 12.34.[3][a] states:

> Because of the required early timing of a Rule 12(b)(6) motion, the option of converting it to a Rule 56 summary judgment motion tends to have limited utility. Whenever discovery may be needed to determine whether the matters advanced by the movant outside the pleadings may present genuine issues of material fact (thus precluding summary judgment), Rule 56(f) comes into play. That in turn will likely lead to delays, and often the need for considerable fleshing out of the facts of the case, contrary to the notion of the threshold presentation and disposition of motions to dismiss.
>
> Courts tend to use the conversion option only in situations in which the materials extrinsic to the pleadings are incontrovertible and pose discrete and dispositive issues. Examples of such intrinsic material include a government handbook establishing the absence of an employment contract as a matter of law, plaintiff's depositions establishing a limitations bar, and a stipulation incorporated into a court order in previous litigation, that operated to bar the instant action. [footnotes omitted].

13

The extrinsic materials offer by Centrix on its motion to dismiss would place a conversion of this motion well beyond the narrow scope that courts afford that provision. The external matters presented by Centrix are not incontrovertible testimony of the pleading party, or dispositive government publications which are undisputed, even prior court orders, or any other matters that even approach that degree of incontrovertibility. Rather, the matters which Centrix seeks to raise go to a fact-sensitive issue of the contribution of Mr. Newell to the invention at issue. Accordingly, the present Rule 12(b)(6) motion to dismiss should not be converted into a motion for summary judgment.

**If the Motion is Treated as one for Summary Judgment, It must be Denied.**

One of the elements of invention claimed in the '803 patent is "an elongated tubular handle formed of a plastic material and having a continuous, uninterrupted bore extending therethrough." The Declaration of Robert L. Newell establishes that the use of an extruded hollow handle have a bore throughout its length was specifically suggested by him because the use of such a handle increased the speed and economy of manufacturing the brush. Indeed, the patent application as originally filed by Centrix in March 1989 did not claim a hollow handle with a bore running throughout the length of the handle. See, file history of the '803 Patent attached as Exhibit B to the Declaration of Kenneth L. Winters. In fact, claims of the original patent application, which claims did not claim "an elongated tubular handle formed of a plastic material and having a continuous, uninterrupted bore extending therethrough." were rejected by the patent examiner in part because the prior art as shown by U.S. Patent No. 4,731,896 issued to Yamaki. See, Examiner's Action from file history of the '803 Patent attached to the Declaration of Kenneth L. Winters as Exhibit C. The Yamaki patent, a copy of which is attached as Exhibit D to the Declaration of Kenneth L. Winters, relates to a dental brush whose handle is not "an

14

elongated tubular handle formed of a plastic material and having a continuous, uninterrupted bore extending therethrough.". Rather, the claim of such a hollow handle with a bore running therethrough were first added by Amendments dated February 9, 1990 and October 5, 1990. See, Amendments from file history of the '803 Patent attached as Exhibit E to the Declaration of Kenneth L. Winters. Indeed, in the October 5, 1990 Amendment, the applicant stressed a molded device rather than the extruded tube with a bore therethrough "did not provide the ease of construction afforded by Applicant's claim structure" and that the construction claimed by the applicant "resulted in a very economical device . . . which could be purchased at a price which would encourage the dentist to dispose of the device." Id. at p. 3. Such economy of production was one of the very reasons why Newell contributed the concept of using a hollow tube handle with a bore running therethrough which could be quickly and cheaply extruded.

Newell's contribution of the use of a hollow, tubular handle with a bore running therethrough is a sufficient contribution to make him a joint inventor. In Garrett Corp. v. United States, 422 F.2d 874, 881 (Ct. Cl. 1970), cert. denied, 400 U.S. 951, 91 S.Ct. 242, 27 L.Ed.2d 257 (1970), the court defined joint invention as follows:

> Joint invention connotes collaboration of effort to produce a complete and operative invention. One who merely suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a joint inventor.

Here, the '803 patent describes one of the objects of the invention as "to provide a readily inexpensive dental brush that is rendered totally disposable after each use." (See, Exhibit 10 to Declaration of Discko at column 2 lines 10-12). A further object was "to provide a dental brush having a bendable end portion . . . ." (Id. at column 2, lines 13-14). While Centrix may have contributed to the invention the concept of an inexpensive bendable brush, Newell contributed

the concept of using an inexpensive, extruded, bored-through, hollow tube handle and a mass-producable crimping process which made the invention complete and operative.

Newell's Declaration further sets forth issues of fact regarding Centrix's access to the confidential information which Andon alleges was taken, as well as its misappropriation of Newell's participation and rights with regard to the inventorship of the invention claimed at issue. The Declaration of Robert Newell, at a minimum, creates a genuine issues of material fact precluding summary judgment.

Even if the Declaration of Newell were not sufficient, facts relating to the matters raised by Centrix remain in the possession of Centrix. Discovery as to those facts should be allowed under Fed. R. Civ. P. 56(f). Rule 56(f) states that when it appears from the affidavits of a party opposing a motion for summary judgment that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may either deny the summary judgment motion or "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." This is also in accordance with the language in Fed. R. Civ. P. 12(b)(6) that if a motion to dismiss is converted into a summary judgment motion, "all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

A court should not be overly hasty in granting summary judgment when a party asserts that it needs discovery. Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995). In Hellstrom v. U.S. Dept. of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000), the court stated:

> However, summary judgment should only be granted "[i]f *after discovery*, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (alteration in original

16

and emphasis added). "The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." <u>Trebor Sportswear Co. v. The Limited Stores, Inc.</u>, 865 F.2d 506, 511 (2d Cir. 1989) (quoting <u>Anderson</u>, 477 U.S. at 250 n. 5, 106 S.Ct. 2505). Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. See <u>Sutera v. Schering Corp.</u>, 73 F.3d 13, 18 (2d Cir. 1995); <u>Meloff v. New York Life Ins. Co.</u>, 51 F.3d 372, 375 (2d Cir. 1995); <u>Jones v. Coughlin</u>, 45 F.3d 677, 680 (2d Cir. 1995).

Here, the very matters raised by Centrix in its motion papers are on their face incomplete. Several of the letters upon which Centrix relies expressed refer to attached samples, yet no such samples are produced in connection with the motion, or described in any detail in the moving papers. Centrix also relies on selected copies of correspondence it had with a defunct corporation. Andon has not had discovery with respect to these matters, which may well be expected for the reasons set forth in Newell's declaration to show that at the time of those letters Centrix had not yet invented a disposable bendable dental brush with a hollow tube handle with a bore therethrough. Likewise, Andon has not deposed the representatives of Centrix nor Mr. Robbins with respect to the statements made in their declarations, nor has it had discovery into the sources of suppliers and equipment used by Centrix in setting up its competing brush production facilities. See, Declaration of Kenneth L. Winters. Under Rule 56(f), any motion for summary judgment must be denied.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that the motion by Centrix be denied in its entirety.

Respectfully submitted,

ANDON BRUSH COMPANY, INC.

By: _____
Matthew C. Mason (ct 15291)
Gregory and Adams, P.C.
190 Old Ridgefield Road
Wilton, CT 06897
(203) 762-9000 (Tel.)
(203) 834-1628 (Fax)
mmason@gregoryandadams.com

Of Counsel:

Kenneth L. Winters, Esq.
G. Glennon Troublefield, Esq.
Carella, Byrne, Bain, Gilfillan,
    Cecchi, Stewart & Olstein
5 Becker Farm Road
Roseland, NJ 07068
Phone: (973) 994-1700 * Fax: (973) 994-1744
Email: kwinters@carellabyrne.com

## CERTIFICATE OF SERVICE

I hereby certify that, on January 30, 2004, a true and correct copy of the foregoing was served by first class mail, postage prepaid, upon the following:

Arthur T. Fattibene, Esq.
Fattibene & Fattibene
2480 Post Road
Southport, CT  06490
203-255-4400


_____
Matthew C. Mason