# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CENTRIX, INC., | : |
| Plaintiff, | : **Civil Action No. 3:03 CV 703 (CFD)** |
| v. | : **DECLARATION OF** |
| | : **ROBERT L. NEWELL** |
| ANDON BRUSH COMPANY, INC., | : |
| Defendant. | : |

Robert L. Newell, being of full age, declares under penalty of perjury:

1.      I am the president of Andon Brush Company, Inc., which is the defendant in the above entitled action. I have personal knowledge of the statements made herein.

2.      Before I became employed by The Applicator Company, I was employed for eight years by the E.J. Brooks Company. The E.J. Brooks Company was a company that manufactured plastic seals and security devices. My employment at The E.J. Brooks Company was in the field of research and development. My work at The E.J. Brooks Company has resulted in several inventions that were patentable and/or patented.

3.      In or about early 1987, I became employed by The Applicator Company. My initial job duties included being the person in charge of mechanical development for both new and existing equipment for The Applicator Company. That work included maintaining and redesigning the tooling that was used at The Applicator Company. My job duties expanded to being in charge of production management, and I became plant manager for The Applicator Company. My work included involvement in the preparation of cost estimated for tooling and

machinery, as well consideration of how various materials, machining, and production processes would affect the cost of producing various products of The Applicator Company. As a result of these skills and responsibilities, I was consulted with respect to the development of products that were to be manufactured by The Applicator Company.

4.      In or about late December 1988 or January 1989, the sales manager of The Applicator Company, Gerald Robbins, informed me that The Applicator Company had been contacted by a company that was seeking to develop a small, disposable, bendable brush. As he explained the concept at time, the company that contacted him, which I later learned was Centrix, was interested in having a small diameter solid molded handle brush that would be bendable at the bristle end by virtue of a thinning of the brush handle at the bending point. Mr. Robbins raised with me at that time the question of whether a bendable brush could be made by co-extruding a wire in a handle so that when the handle was bent the brush would stay in a bent position.

5.      Centrix has produced a letter dated December 2, 1998 from Centrix to The Applicator Company. Such a letter has been attached as Exhibit 1 to the Declaration of Gerald Robbins and as Exhibit 7 to the Declaration of John Discko, Jr. I have not seen this letter before, and I do not know what sample was attached to the letter. However, its contents are entirely consistent with the concept that Gerald Robbins explained of co-extruding a wire in a plastic handle so as to hold it in a bent position. The first sample I ever saw regarding a potential disposable bendable brush had a handle with a wire inside it to hold it in a bent position, and that was a sample that was sent by The Applicator Company to Centrix. There is nothing in the letter to indicate that any hollow handle would be crimped.

6.      Upon being informed of the use of a wire in a handle, I considered how such a device might have to be made, and I and others concluded that the costs of material and their

processing would be such that while the manufacture of such a brush would be possible it might not be desirable or practical from a cost point of view for a cheap disposable brush.

7.      That December 2, 1988 letter is also inconsistent with the claims of the patent in suit in that the letter indicates that, according to Centrix, "[t]he brush type in your plastic brush cap may be exactly what we need."  The Applicator Brush Company never made a brush cap with a hollow bore throughout the length of the shaft.  All of the brush caps made by The Applicator Company were molded such that the shaft was solid except for a bore of approximately 3/16" into which the bristles for the brush would be fastened by a staple.  Because the patent in suit in this action claims, among other elements, "an elongated tubular handle . . . having a continuous, uninterrupted bore therethrough" and that the hinged section whereby the brush is bendable "being defined by the opposed tubular wall portions of said handle being disposed contiguous to one another to define a flattened portion . . .", the use of a solid handle such as those used in the brush caps that were made by The Applicator Company would not be what was claimed as the invention in the patents in suit even if they were crimped to form a hinged section.

8.      Based upon the foregoing, the reference in the December 2, 1988 letter to The Applicator Company to the plastic brush cap does not relate to the use of a hollow tube handle with a bore extending therethrough.

9.      Centrix has produced a letter dated December 20, 1988 from Centrix to The Applicator Company.  Such a letter has been attached as Exhibit 2 to the Declaration of Gerald Robbins and as Exhibit 8 to the Declaration of John Discko, Jr.  I have not seen this letter before, and I do not know what sample was attached to the letter.  I do know, however, from reading that letter and its reference to "inserting a pre-manufactured brush tip in a clear butyrate tube" that the prototype discussed in that paragraph involves a separate handle into which disposable tips are

inserted. Such a brush is not a unitary device, but a device consisting of a handle and separate replaceable brush tips. It is also clear from this letter that Centrix was not aware of how to mount the brush bristles directly into a hollow tube handle. Further, the reference in that letter to a " 1/2" pinch " appears *not* to refer to the crimp that is used to permit the bending of the brush because the crimps used on the brushes manufactured for Centrix were developed by myself, and were in the approximate range of .035" to .050" deep on the manufactured product.

10.     The December 29, 1988 response by The Applicator Company to Centrix, attached as Exhibit 3 to the Declaration of Gerald Robbins and as Exhibit 9 to the Declaration of John Discko, Jr., indicates that the prototype sent with the December 20, 1988 was indeed a type of brush wherein the brush tips were separate parts that were inserted into a handle. The fact that Gerald Robbins, the sales manager for The Applicator Company, was responding with respect to what parts of a product The Applicator Company would consider making reinforces my recollection that by this time Gerald Robbins and I had discussed the concept of manufacturing a bendable brush with a wire in the handle which was bendable, and the use brush tips on such a handle. I felt that from a standpoint of production and production costs, that either of these two types of brushes were not desirable. When I was asked about such a design, I recommended to Gerald Robbins that, for reasons of speed and economy in production, an extruded, hollow handle with a bore through its entire length would be the appropriate way to manufacture a handle for an inexpensive disposable brush. Such an extruded hollow handle with a bore running its entire length is relatively quick and easy to manufacture because the plastic that is used for the handle need only be run though an extruding die and cut to length, whereas handles that are not bored their entire length must be made by other processes such as injection molding or by using other manufacturing steps which render the manufacturing process slower and/or more

expensive. Eric Robbins, the owner of The Applicator Company, and Gerald Robbins furnished a sample of an extruded brush handle to Centrix for their consideration.

11.     I recall having a meeting with representatives of Centrix in early 1989. Present at that meeting were at least Mel Drumm, Dr. Dragan, John Discko on behalf of Centrix, and Eric Robbins, Gerry Robbins, and myself on behalf of The Applicator Company. I believe that the meeting occurred sometime during the winter of 1989 because I distinctly remember that the weather was cold outside and the representatives from Centrix wore winter coats and hats that day. At that meeting, I told the representatives of Centrix that for a disposable brush an extruded, hollow tube handle could be used to for reasons of speed and economy of manufacture. I told the representatives of Centrix that I would be willing to become involved in developing such a brush.

12.     Within days of that meeting, I recognized that one problem that would likely be encountered would be to have a crimp that would be deep enough to allow the brush to be bendable but not so deep or sharp that the crimping process on a manufacturing scale would cut through the tube. I informed the representatives of Centrix that I would work on the design of a specific crimp that would allow the brush to bend without creating problems of cutting the handle during the crimping process, and that automated tooling would need to be designed and created if such a brush were to be mass produced.

13.     I have reviewed the sketches attached as Exhibit 1 to the Declaration of John Discko, Jr., which I have not seen before this motion. While that document does refer to the use of a crimp to permit bending, there is nothing in that document to require that the handle be a hollow tube with a bore running continuously therethrough.

14.     I have reviewed the sketches attached as Exhibit 2 to the Declaration of John Discko, Jr., which I have not seen before this motion. While that document does refer to the use

of a crimp to permit bending, there is nothing in that document to require that the handle be a hollow tube with a bore running continuously therethrough.

15.     I have reviewed the sketches attached as Exhibit 3 to the Declaration of John Discko, Jr., which I have not seen before this motion. While that document does refer to the use of a crimp to permit bending, there is nothing in that document to suggest that the handle be a hollow tube with a bore running continuously therethrough. Likewise, Exhibits 5 and 6 to the Declaration of John Discko, Jr., lack any reference to requiring that the handle be a hollow tube with a bore running continuously therethorough.

16.     I have also reviewed the sketches attached as Exhibit 4 to the Declaration of John Discko, Jr., which I have not seen before this motion. While that document does refer to the use of a crimp to permit bending and mentions the possible use of a tube, there is nothing in that document to suggest that the handle be a hollow tube *with a bore running continuously therethrough*. Moreover, for the reasons set forth previously, it may well be that this document was created after I had first recommended the use an extruded, hollow tube handle with a bore running its entire length. Inasmuch as The Applicator Company has long since ceased to exist, an examination of the documents and correspondence in the possession of Centrix may more precisely reveal that the suggestion of using an extruded, hollow tube handle with a bore throughout its length had been communicated to Centrix by this point in time.

17.     I personally experimented to develop a crimp for a hollow tube with a bore therethrough that would enable the tip to be and stay bent. As I had expected, problems developed in that the crimping process would result in a cutting of the tubular handle if the crimp was too deep or too sharp, or that it would result in a handle that was not sufficiently bendable if the crimp were not deep enough or was too gradual. Over a period of weeks, I would grind and file a crimping device to try different depths and create different angles for the crimp. Through

this trial and error process, I developed a crimp that would allow the brush to remain in a bent position, and which did not have a great likelihood of cutting through the tube when the crimp was formed. This initial design for the crimp was a single "v" indentation on opposing sides of the handle, with the angle of the "v" appropriately adjusted to prevent the cutting of the hollow tube handle. I later designed a crimp involving a double "v" indentation, which was more difficult to design due to a need for a more complex configuration of the angles and flat spots for the crimp, but it produced an improved ability of the handle to stay in a bent position. The details of the angles, flats, depths, and crimping pressure to form these crimps was not disclosed beyond Centrix, Mr. Robbins, myself, and those employees that may be engaged in the manufacture of the product.

18.     When it became apparent that The Applicator Company was going to cease operation, Gerald Robbins, Centrix, and myself decided to incorporate Andon Brush Company, Inc. We had reached an understanding that with the expertise of Mr. Robbins and myself in the field of brush manufacturing, that Mr. Robbins and myself would conduct and manage the production and manufacturing operations of Andon Brush Company, Inc.; and with the contacts of Centrix in the field of the sale of dental equipment that Centrix would manage the sale of the bendable dental brushes.

19.     When Andon Brush Company, Inc., was formed, it became necessary for Andon to develop the production layout for, and to acquire the machinery and equipment necessary for, the production of the bendable brush for Centrix. Among the equipment acquired for the manufacture of the product was a Carlson bristling head for use in the making and design of the brush making machine. Because Carlson bristling heads were designed and manufactured to be used in a vertical position, and because the production configuration at Andon called for the

Carlson bristling head to be used in a horizontal position, I modified the design specifications for the Carlson bristling head which I used to manufacture Andon's brush making machines.

20.     Because Centrix was a one-third shareholder of Andon Brush Company, Inc., representatives of Centrix had been allowed essentially unrestricted access to the files and records of Andon Brush Company, Inc.  For years, Dr. Dragan, a principal of Centrix, was a member of the Board of Directors of Andon Brush Company, Inc., having resigned from that position in or about the year 2000 when Centrix decided to set up a manufacturing operation to compete with Andon Brush Company, Inc.  In addition, James Witkowski, an employee of Centrix, was allowed on the premises of Andon Brush Company, Inc., and had access to all records of Andon Brush Company.  Mr. Witkowski was an active participant in annual audits of Andon Brush Company, and in the course of such audits he was able to review invoices from Andon's suppliers as well as Andon's invoices to its customers.  The information available to Centrix from a review of these records and other records of Andon included Andon's rate of production of its products, Andon's cost to produce it various products, the source and pricing of the machinery and equipment used by Andon in the manufacture of its products, the source and pricing of the suppliers of the brush stems used by Andon in manufacturing its brushes, the source and pricing of the suppliers of the nylon used by Andon in manufacturing the bristles for its brushes, the source and pricing of the suppliers of the staples used in fastening the bristles into the brushes, and other documents.  I am personally aware that copies of documents were taken from Andon's records by representatives of Centrix because in one meeting in or about the early part of 2001, Mr. Mel Drumm of Centrix showed me one page of an invoice addressed to Andon Brush Company, Inc., which could only have been taken from Andon's files, and complained that the company should not have paid that invoice because it was not a company-related

expenditure. In actually, the second page of the invoice clearly showed that the expense was not paid by Andon but instead was paid by the individual concerned.

21.     Over the course of the years in which Andon had manufactured the bendable disposable dental brushes for Centrix, Centrix has engaged creating a price squeeze on Andon whereby Andon's profits from the manufacture of the brush are diminished while Centrix continues profit from the sale of the brush. When The Applicator Company was manufacturing the brush for Centrix, Centrix was asking for a price range of approximately $40 per thousand. The Applicator Company sold the brushes to Centirx at approximately $36 per thousand. Armed with its knowledge of Andon's costs of production, and being the only purchaser from Andon of the bendable, disposable dental brush, Centrix was able to force Andon's prices down to $20 to $25 per thousand (depending on the particular model of brush and year of sale). By doing so, Centrix was able to minimize the profit available to Andon while at the same time maintaining an ability to maximize its own profit from the sale of the final product.

22.     In or about August 1999, Centrix requested a quotation from Andon for the production of a disposable bendable dental brush with a bendable brush on both ends of the shaft. The production of such a brush would require Andon to obtain additional equipment, and the quotation made by Andon reflected that costs. When Centrix could not force a lower price quotation from Andon, Centrix, without notice to Andon, decided to and did hire another company to manufacture a double-headed brush making machine that they intended to and did use to make the bendable brush dental brushes in competition with Andon and to take that manufacturing away from Andon. I learned that in doing so, Centrix purchased from Carlson bristling heads based on my specifications for a horizontal bristling head. I also learned Centrix began ordering from Andon's supplier the handle for the brush which had been developed according to specifications prepared by Andon, and which handles were assigned part numbers

unique for Andon which part numbers were used by Centrix to order the handles for brushes it was having manufactured elsewhere. Also, Centrix discontinued ordering all bendable brushes from Andon and had them manufactured elsewhere.

23.    After Andon was able to survive the loss of sales to Centrix, which had been its largest customer, Centrix commenced this patent infringement action notwithstanding that I had contributed to the invention which is the subject of the patents in suit the design of the crimp and the concept of using an extruded hollow tube handle with a bore therethrough and had developed the crimp that made the manufacturing of such a brush possible.

I declare under penalty of perjury that the foregoing is true.

Executed on January 29, 2004

Robert L. Newell