IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
At Hartford

CENTRIX, INC.

          Plaintiff/Counter-Defendant

       v.                                  Civil Action No.
                                         3:03-CV-703(CFD)(WIG)

ANDON BRUSH COMPANY, INC.,

          Defendant/Counter-Plaintiff

**PLAINTIFF, CENTRIX, INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO ENFORCE SETTLEMENT AGREEMENT
AND TO STAY DISCOVERY PENDING RESOLUTION OF THIS MOTION
AND/OR IN THE ALTERNATIVE TO EXTEND THE DISCOVERY
DEADLINE OF THE SCHEDULING PLAN FILED ON OR ABOUT
AUGUST 25, 2003**

Arthur T. Fattibene, CT 06916
Paul A. Fattibene, CT 12760
Attorneys for Plaintiff,
Centrix, Inc.
2480 Post Road
Southport, CT 06890
Tel: 203-255-4400;
Fax: 203-259-0033

Oral Hearing Requested

## I.  NATURE OF PROCEEDINGS

In the joint Report of Parties Planning Meeting filed on or about August 25, 2003, the parties requested an early settlement conference with a Magistrate Judge.  On August 28, 2003, the Court referred the case to Magistrate Judge Garfinkel for a settlement conference.  On October 7, 2003, Judge Garfinkel issued a Settlement Conference Order and scheduled a settlement conference for December 3, 2003 at 10:00 a.m.  At the December 3, 2003 settlement conference, the respective parties were represented by their respective principals, viz. Dr. William B. Dragan, CEO and Melvin Drumm, President of Centrix, together with their counsel of record, and Mr. Robert Newell, President of Andon and his counsels, Matthew C. Mason and Kenneth L. Winters.

At the December 3, 2003 settlement conference, the parties discussed settlement in some detail with Judge Garfinkel.  The parties made some progress.  At the conference, the parties did agree that:

1.  Andon would immediately cease its alleged infringing acts and would cease any further manufacture and sale of the accused products, and

2.  That neither Andon and/or its president, Mr. Newell, invented any part of the subject matter of the patents in suit.

1

The only substantial issue that was not resolved at the settlement conference was the monetary issue. Initially, Centrix demanded a monetary payment of Fifteen Thousand ($15,000.00) Dollars, which was rejected by Andon. Centrix then lowered its monetary demand to only $1,000.00. Andon indicated it would take the monetary offer of $1,000.00 under advisement. As a result, the settlement conference was adjourned. Before adjourning, Judge Garfinkel requested that the parties update him on any further settlement talks by December 12, 2003.

On December 12th, Andon's counsel copied the Court on a letter to Centrix's counsel, attached as Exhibit 1, advising that Andon agrees that:

1.  "Andon Brush Company, Inc. will cease to manufacture, sell, offer to sell or use its present "Cobra" brush as a disposable dental brush, and will agree not to otherwise infringe any valid claims of U.S. Patent No. 5,001,803."

2.  Andon Brush Company, Inc. makes no concession of validity or infringement.

3.  Andon Brush Company, Inc. and Robert Newell will relinquish any claim of inventorship with respect to U.S. Patent No. 5,001,803, and

2

4.  In exchange for the relinquishment of any claim of inventorship, Centrix, Inc. will waive any and all claims for monetary compensation for any alleged infringement up to the time of signing the settlement agreement.

On December 17, 2003, Andon was advised that Centrix would not waive the monetary demand of $1,000.00.

Shortly thereafter Andon, on reconsideration, agree to make the payment of the $1,000.00 monetary demand, and Judge Garfinkel was so advised.  See attached Exhibit 2.

On December 31, 2003, counsel for Centrix, on the understanding reached, reduced the settlement reached to written form and submitted the same to Andon and Judge Garfinkel.  See Exhibit 3.  Apparently, Andon took issue to Centrix's December 31, 2003 Draft Agreement (Exhibit 3).

Between December 31, 2003 and January 16, 2004, the parties exchanged several revised draft agreements in an effort to finalize the written form of the settlement agreement reached.

Andon now seeks to avoid the agreement reached by raising a new issue relating to the wording of the Stipulation of Dismissal with prejudice to which both parties had previously agreed upon.

This Motion is therefore necessitated to enforce the settlement which the parties have, in fact, agreed to and which has been reduced to final form.

## II.   STATEMENT OF FACTS

### (a)   The Parties to the Suit

Plaintiff, Centrix, is a privately owned corporation organized under the laws of Delaware with offices located in Shelton, Connecticut.  Centrix was founded and organized by Dr. William B. Dragan, a practicing dentist, in 1970. Since then, Centrix has grown and is well recognized in the dental profession, both domestically and internationally, as a manufacturer and seller of innovative applicators and sundry other dental products.  Over the years, Centrix has accumulated a portfolio of at least one hundred or more U.S. and international patents relating to various dental products and brush type applicators.

Defendant, Andon, is a corporation that was organized under the Laws of the State of Delaware on or about February 12, 1990.  Centrix was instrumental in forming and organizing Andon with two individuals, Gerald Robbins and Robert Newell, for the expressed purpose of supplying Centrix with the new and novel brush Centrix had invented for use by dentists and for which the patents in suit were

4

granted.  Centrix has been successfully marketing the
patented brushes to the dental profession since September
1989.  From February 1990 to the year 2000, Andon was
Centrix's sole supplier of the patented brushes.

Initially, the issues shares of Andon stock were
equally divided between Centrix, Gerald Robbins and Robert
Newell.  On or about February 1, 2001, Gerald Robbins sold
his interest in Andon to Robert Newell.  Centrix still
retains its one-third interest in Andon.

In the year 2000, Centrix, for economic reasons and to
maintain its market share, decided to make the patented
brushes in-house, whereby Centrix ceased using Andon as its
sole supplier for the Centrix' patented brushes.

After Centrix ceased using Andon as Centrix's sole
supplier for the patented brushes, Andon nevertheless
continued the manufacture of the patented brushes and
commenced marketing the patented brushes to Centrix's
dental customers, thus giving rise to this lawsuit.


**(b) Background Facts**

In November 1988, John J. Discko and Dr. William B.
Dragan of Centrix conceived a novel brush construction for
use by dentists, which was reduced to actual practice prior
to December 2, 1988, and for which a patent application was

filed on March 20, 1989.  The application was assigned SN 325,888 and is now U.S. Patent 5,001,803 (the '803 patent) in suit, which was granted March 26, 1991.  Centrix also secured a design patent, DES 329,142 (the '142 patent) for the brush design which is also in suit.

In September 1989, Centrix entered into a supply agreement (Exhibit 4) with the Applicator Company of Riverdale, New Jersey whereby the Applicator Company agreed to supply Centrix with the novel brushes.  At the time Gerald Robbins and his cousin, Eric Robbins, were the principles of the Applicator Company.  The Applicator Company was a job shop manufacturing various types of applicators and brushes for others.  Robert Newell was employed by the Applicator Company as its plant manager responsible for operating and maintaining Applicator Company's brush making machines and equipment.

About December 1989 or January 1990, Centrix learned that the Applicator Company was on the verge of bankruptcy, and Centrix was about to lose its only source of supply for the patented brushes.  In January 1990, Gerald Robbins, Robert Newell and Centrix entered into discussions involving the forming of a new company whereby the new company would continue to supply Centrix with the novel brushes in view of the Applicator Company's imminent

bankruptcy, and thereby prohibit any interruption in the supply of said brushes to Centrix.  As a result of these discussions, the Andon Brush Company, Inc. was organized by February 1990 to supply Centrix with the new brushes Centrix had been aggressively marketing.

Andon established its place of business in New Jersey, and its day to day business was managed by Robert Newell as President and Gerald Robbins as Vice President of Sales and Treasurer.  Centrix, during Andon's formative period, provided Andon with management and financial expertise, and purchase orders for the new brushes to keep Andon financially solvent.

To start Andon's brush making business, Andon purchased a brush making machine which was designed and built by F&W Tool, a machine company then located in Brooklyn, NY for $50,000.00.  Because time was of the essence, Centrix paid F&W Tool an additional $5,000.00 premium for immediate delivery of the machine to insure an uninterrupted supply of brushes Centrix needed to meet the market demand.

Upon F&W's delivery of the machine to Andon, Andon immediately started to supply Centrix with the new brushes. For the next ten (10) years, Andon was Centrix's sole supplier of the patented brushes.  During these ten (10)

years, Centrix also improved and expanded its brush line;
as well as the market for such brushes both domestically
and internationally.

Over the years that Andon was supplying Centrix,
Andon, at regular intervals, would increase its prices for
the brushes until Centrix could not meet its competitor's
prices, causing Centrix to loose its market share.

To prevent Centrix from losing its market share,
Centrix made the decision that Centrix would invest in a
brush making machine and produce the brushes in-house.
Accordingly, Centrix invested approximately $400,000.00 in
a state-of-the-art fully automatic brush making machine and
commenced making its own dental brushes.  Centrix's brush
making machine was designed and manufactured by Adaptive
Mfg. Technologies, Inc. of Long Island, New York.  As a
result, Centrix phased out Andon as its sole supplier of
the patented brushes.

Sometime in the year 2000, Mr. Newell and Gerald
Robbins met with Centrix to learn why Centrix purchase
orders for brushes to Andon were diminishing.  At this
meeting Andon was advised that Andon's pricing for brushes
was too high, causing Centrix to lose its market share as
Centrix could not meet its competitors' prices.  Centrix
also advised Andon that Centrix had purchased a brush

making machine, and proceeded to show both Mr. Newell and
Mr. Robbins, Centrix's new state-of-the-art brush making
machine that Centrix had purchased.

Shortly thereafter, Gerald Robbins resigned from Andon
Brush Company and sold his interest in Andon to Robert
Newell.  Centrix still retains its one-third ownership in
the issued shares of Andon.

After Centrix ceased using Andon as its sole supplier
for the patented brushes, Andon nevertheless continued to
make the patented brushes and began selling them on Andon's
own account to Centrix's customers without the consent of
Centrix.  Andon's unauthorized making and selling of the
patented brushes caused Centrix to file the instant
lawsuit.

**The Patents In Suit**

The brush patents in suit are U.S. Letters Patent
5,001,803 (the '803 patent) granted March 26, 1991 on a
patent application filed on March 20, 1989; and a U.S.
Design Patent No. DES 329,142 (the '142 patent) granted
September 8, 1992, attached hereto as Exhibits 5 and 6
respectively.  The patented brushes have been widely
accepted by the dental profession and are being sold
throughout the world in substantial numbers.

**The Accused Device**

After Centrix ceased purchasing its patented brushes from Andon, Andon commenced the marketing of the Centrix patented brush construction directly to Centrix's customers and perhaps others on its own account without the consent of Centrix.  Andon commenced the sale of the accused brushes under its own COBRA brand name.  After supplying Centrix with Centrix's patented brushes for some ten (10) years, Andon's sales of the patented brush under the COBRA brand can only be deemed to be willful to the nth degree. Attached hereto as Exhibit 7 is an actual sample of the accused Andon COBRA brush.

**Defendant's Estimated Sales**

Since commencing the unauthorized manufacture and sale of the accused brushes (Exhibit 7), Andon admits to making and selling approximately $39,745.00 in gross sales of the accused brushes.  However, in a recently published November 3-December 21, 2003 catalog of Benco Dental, a dental supplier, the accused Andon's COBRA brush is still being advertised and sold by this dental supplier.

(c)  **The Chronology of Events Leading Up to the
Settlement Agreement**

Almost immediately following the filing of the
lawsuit, the parties entered into direct settlement
discussion.  On July 14, 2003, the parties met in a face to
face meeting, together with their respective counsels in an
effort to settle the litigation in an amicable manner.  At
the time, Andon had not yet filed its Answer and
Counterclaims.

On October 7, 2003, Judge Garfinkel issued his
Settlement Conference Order setting December 3, 2003 for
the settlement conference.

Centrix submitted its first draft of a proposed
settlement agreement to Andon's then attorneys (McCarter &
English) on or about October 21, 2003, attached hereto as
Exhibit 8.

On October 27, 2003, Centrix received a revised
version of the proposed settlement agreement from Andon's
then counsels, McCarter & English, in which the Centrix
draft of October 21, 2003 was substantially altered.  See
attached Exhibit 9.  On October 28, 2003, Centrix advised
Andon that its revised version of the proposed settlement
agreement (Exhibit 9) was unacceptable.

On or about November 6, 2003, it was discovered that Andon's attorneys, McCarter & English, had a conflict and had to withdraw from the case.  Consequently, the settlement discussions that Centrix's counsel was having with McCarter & English came to an abrupt end.

At the Settlement Conference on December 3, 2003, Andon was represented by new counsel, Mr. Winters of the firm of Carella, Byrne, Bain, Gilfillan, Cecci, Stewart & Olstein.  In discussing settlement at the settlement conference on December 3, 2003 with Judge Garfinkel, the parties discussed various scenarios for resolving the dispute.  After some discussion, the parties did advance the settlement discussions and in the presence of Judge Garfinkel, and at which time the parties agreed that:

(1)  Andon agreed to immediately cease its alleged infringing acts and would immediately cease the manufacture and sale of the accused infringing products.

(2)  Andon also agreed that neither Andon and/or its president, Robert Newell, conceived or invented any part of the subject matter disclosed in the patents in suit.

(3)  Centrix also agreed to reduce its monetary demand from $15,000 to $1,000.00.

The only substantive issue that was not resolved was the matter of the monetary payment.  As it appeared that

Andon would not agree to any monetary payment, Judge
Garfinkel adjourned the Settlement Conference with the
understanding that the parties would continue their
settlement efforts.  Before adjourning, Judge Garfinkel
requested that the parties advise him of the status of
their continued settlement talks by December 12, 2003.

On December 12, 2003, Andon's new counsel, Mr.
Winters, advised Judge Garfinkel the terms of settlement
agreeable to Andon were:

(1)  Andon would cease the manufacture and sale of the
accused products and agreed not to otherwise infringe the
'803 patent.

(2)  Make no concession of validity or infringement.

(3)  That Andon and Robert Newell would relinquish any
claims of inventorship with respect to the '803 patent, and

(4)  Wanted Centrix to agree to waive all monetary
compensation for any alleged past infringement.  See
Exhibit 1.

On or about December 17, 2003, in a telephone
conversation, Andon was advised that Centrix would not
waive the monetary claim of $1,000.00.  Andon was also
advised that the proposal submitted to Judge Garfinkel,
Exhibit 1, was rejected by Centrix because it did not make

13

any reference to the '142 design patent in suit (Exhibit 6).

After Andon was informed that Centrix would not waive the monetary demand of $1,000, Andon's counsel immediately thereafter, in a second telephone call, advised that on reconsideration Andon was agreeable to the $1,000 payment, in addition to the terms Andon had previously agreed to at the settlement conference, Exhibit 2, and on which Judge Garfinkel was also copied.

Since the parties had now reached agreement on all of the substantive issues, Centrix, on December 31, 2003, advised Judge Garfinkel that the parties had reached a settlement and submitted to Andon with a copy to Judge Garfinkel, a written draft of the settlement agreement to memorialize the agreement reached, attached as Exhibit 3. Attached to the December 31, 2003 draft (Exhibit 3) as Exhibit A is the form of a Stipulated Dismissal with prejudice contemplated by the agreement (Exhibit 3).

On January 8, 2004, Andon submitted to Centrix a revised version attached as Exhibit 10 of the Centrix December 31, 2003 draft agreement (Exhibit 3).

On January 12, 2004, Centrix advised that Andon's revised draft of January 8, 2004 (Exhibit 10) was unacceptable for the reason that Andon's revised draft

14

(Exhibit 10) was vague, ambiguous, indefinite and not final.  Significantly, Andon did not take issue with the Stipulated Dismissal with Prejudice attached as Exhibit A to Centrix's draft (Exhibit 3) and which Andon included in its revised draft (Exhibit 10) unchanged.  On January 12, 2004, Centrix advised that Andon's January 8, 2004 revised draft was unacceptable.  In an effort to advance the settlement, Centrix submitted another draft agreement which incorporated some of Andon's suggestions made in Andon's revised draft (Exhibit 10) with which Centrix could agree, attached hereto as Exhibit 11.

On January 14, 2004, Centrix received a further revised draft of the settlement agreement from Andon which is attached as Exhibit 12.  On the same day, January 14, 2004, Centrix advised Andon of certain objections to Andon's proposed January 14th revised draft, Exhibit 12.

On January 15, 2004, Andon submitted to Centrix a further revised draft attached hereto as Exhibit 13, allegedly to obviate the objections Centrix noted with respect to Andon's January 14, 2004 draft (Exhibit 12).

On January 16, 2004, Centrix advised Andon that Andon's revised draft of the agreement of January 15, 2004 (Exhibit 13) did not comport with the agreement reached with respect to the third "Whereas" clause, which Andon

15

suggested be made a part of the agreement.  Also Andon, in its January 15, 2004 draft (Exhibit 13) modified the form of the Stipulated Dismissal with prejudice which had previously been agreed to.

In view of the material issues to which the parties agreed, Centrix submitted to Andon on January 16, 2004, a final draft agreement attached as Exhibit 14, which incorporated all the terms of the agreement upon which the parties agreed.

Andon has refused to formalize the agreement reached.

As indicated in Centrix's letter of January 16, 2004, and attached draft agreement Exhibit 14, the parties have unequivocally agreed to the following:

1.  Andon agrees to immediately cease and desist from manufacturing, using, and/or selling the accused Andon's "Cobra" brushes, an example of which is attached hereto as Exhibit A, and the accused Reliance styled brushes, an example of which is attached hereto as Exhibit B, which Centrix asserts infringes one or more of the claims of the '803 patent and '142 patent (paragraph 1 of Andon's January 15, 2004 revised draft (Exhibit 13) is incorporated in its entirety as paragraph 1 of Centrix's final draft of January 16, 2004 (Exhibit 14)).

16

2.   Andon agrees that it will not make, have made, use and/or sell any brush, either directly or indirectly, that will infringe said '803 patent and/or the '142 patent during the remaining term of said '803 and '142 patents, without the expressed written consent from Centrix, subsequent to the above noted effective date of this Settlement Agreement. (Paragraph 2 of Andon's January 15, 2004 last draft (Exhibit 13) is incorporated in its entirety as paragraph 2 in Centrix's final draft of January 16, 2004 (Exhibit 14)).

3.   Andon warrants that its combined sales of the accused Cobra styled brushes and the accused Reliance brushes between July 1, 2000 and the execution of this Settlement Agreement did not exceed $39,745.00. (paragraph 3 of Andon's January 15th last draft agreement (Exhibit 13) is incorporated in its entirety as paragraph 3 in Centrix's final draft agreement of January 16, 2004 (Exhibit 14)).

4.   Andon agrees to pay Centrix the sum of One Thousand ($1,000) Dollars upon the execution of this Agreement. (paragraph 4 of Andon's January 15, 2004 last draft agreement (Exhibit 13) incorporated in its entirety as paragraph 4 in Centrix's final draft agreement of January 16, 2004 (Exhibit 14)).

5.  Andon further agrees that Andon and/or its president, Robert Newell, did not conceive or invent any part of the structure and/or design disclosed and/or claimed in said '803 and '142 patents.  (Paragraph 5 of Andon's January 15, 2004 last draft (Exhibit 13) is incorporated in its entirety as paragraph 5 of Centrix's final draft of January 16, 2004 (Exhibit 14)).

6.  The parties agree to execute and file a Stipulation of Dismissal of the Lawsuit in the form attached hereto as Exhibit C.  (Paragraph 6 of Andon's January 14, 2004 draft agreement (Exhibit 12) is incorporated in its entirety as paragraph 6 of Centrix's final agreement of January 16, 2004 (Exhibit 14).

***(Note:*** In Andon's January 15, 2004 draft, Andon seeks to modify the wording of the Stipulated Dismissal with prejudice after Andon had previously agreed to the form Stipulated Dismissal in Andon's revised draft of January 14, 2004 (Exhibit 12).  Further, the Court can judicially note that the Stipulated Dismissal to which the parties had agreed is a typical mutual form of a dismissal with prejudice.)

7.  Andon agrees that during the remaining terms of the '803 patent and the '142 patent, it will not accept any purchase orders for the Cobra brush as indicated in

18

paragraph 1 and Exhibit A, that it will not accept any purchase orders for the Reliance brush as identified in paragraph 1 and Exhibit B, and that it will not accept any purchase orders for brushes that infringe the '803 patent and/or the '142 patent. (Paragraph 7 of Andon's last draft of January 15, 2004 (Exhibit 13) has been adopted and incorporated in its entirety as paragraph 7 in Centrix's final draft of January 16, 2004 (Exhibit 14).

8.  Nothing in this agreement shall be construed to preclude Centrix from reinstituting a patent infringement action in the event Andon makes and/or sells a brush that infringes any claims of the '803 and/or '142 patents subsequent to the effective date, written above, of this Settlement Agreement.  Nothing in this settlement agreement shall be construed to preclude Andon from asserting any legal and/or equitable defense to any such patent infringement action except those that are expressly relinquished herein.  (This provision as noted in paragraph 9 of Andon's January 15th draft (Exhibit 13) has been incorporated in substance and is recited in paragraph 8 of Centrix's final draft (Exhibit 14) insofar as the clause is rendered consistent with the Stipulated Dismissal with prejudice to which Andon previously agreed in Andon's proposed draft of January 14, 2004 (Exhibit 12)).

19

9.  Paragraph 10 of Andon's January 15, 2004 last draft agreement (Exhibit 13) has been adopted and incorporated in its entirety as paragraph 9 of Centrix's final draft agreement of January 16, 2004 (Exhibit 14).

10.  Paragraphs 11, 12, 13, 14, 15 of Andon's January 15, 2004 last draft agreement (Exhibit 13) have been adopted and are incorporated in their entirety as paragraphs 10, 11, 12, 13 and 14 respectively in Centrix's final draft of January 16, 2004 (Exhibit 14).

From the foregoing, it can be noted that all of the substantive issues have been agreed to by the parties, and that Andon's clauses, as written in Andon's last draft agreement (Exhibit 13) have been included virtually in their entirety in Centrix's final draft of January 16, 2004 (Exhibit 14).

Significantly, the respective parties have copied Judge Garfinkel through out the settlement discussions and exchanges of the draft agreements.  Centrix submits that a settlement in fact has been achieved as indicated herein. Andon's refusal to execute a written form of the settlement reached cannot nullify the settlement reached.

**A R G U M E N T**

## I.   RELEVANT APPLICABLE LAW

A finding that a settlement offer was made and accepted is a factual one.  Enterprise Rent-A-Car Co. v. Rent-A-Wreck of America,                    ; 51 USPQ 2d 1213, 1214 (8 Cir 1999) citing Vaughn v. Sexton, 975 F.2d 498, 506 (8 Cir 1992).

If the district court's account of the evidence is plausible in light of the record viewed in its entirety, it may not be reversed on appeal; even though the appeal court would have weighed the evidence differently.  Enterprise Rent-A-Car, supra, citing Anderson v. Bessemer City, 470 US 564, 573-74 (1985).

Credibility determinations are within the exclusive domain of the district court, and are virtually unreviewable on appeal.  Enterprise Rent-A-Car, supra, citing United States v. McCarthy, 97 F.3d 1562, 1579 (8th Cir).

It has long been recognized that the courts have broad, inherent authority and equitable power to enforce an agreement in settlement of litigation before it.  Bostick Foundry v. Lindberg, 797 F.2d 280, 282-83 (6 Cir 1986). Moreover, a federal court possesses this power even if the agreement has not been reduced to writing.  Brock v.

21

Scheuner Corp., 841 F.2d 151, 154 (6 Cir 1998).  See also

Enterprise Rent-A-Car, supra, wherein an offer made by

letter and orally accepted constituted an enforceable

agreement.

   A settlement agreement is a contract.  Core-Vent Corp.

v. Implant Innovations, Inc.,                ; 34 USPQ

2d 1581, 1584 (Fed Cir 1995); S and T Mfg. Co. v. County of

Hillsborough,              ; 2 USPQ 2d 1280, 1281 (Fed Cir

1997).

   It has been long established that courts favor dispute

resolution through voluntary settlements and that

settlement contracts will be upheld wherever possible

because they are a means of amicably resolving doubts and

uncertainties and preventing lawsuits.  S and T Mfg. Co.,

supra.

   To create a binding contract, it must be the result of

an offer, an acceptance of that offer and a meeting of the

minds between the contracting parties.  Notare Corp. v.

Aquatic Renovation Systems, Inc.,               ; 46

USPQ 2d 1097, 1082 (SD Ind. 1997)

**II.  THE PARTIES SETTLEMENT DISCUSSION AT THE SETTLEMENT
      CONFERENCE OF DECEMBER 3, 2003 AND AS CONTINUED
      DISCUSSIONS AFTER THE SETTLEMENT CONFERENCE DID
      RESULT IN AN ENFORCEABLE SETTLEMENT AGREEMENT.**

As indicated herein, the parties hereto reached agreement at the settlement conference on two major issues, namely that Andon agreed to immediately cease the making and selling of the accused brushes, and that Andon would not infringe the patents in suit. Andon also agreed that neither Andon nor its president, Mr. Newell, conceived or invented any part of the subject matter disclosed in the patents in suit. The only major issue not resolved at the settlement conference was the monetary issue, which Centrix agreed to reduce from $15,000 to $1,000 for past infringement.

However, on or about December 17, 2003, Andon did agree to the payment of the $1,000 for past infringements (Exhibit 2). On December 31, 2003, Centrix advised Judge Garfinkel that the parties had effectively reached settlement upon the terms discussed at the settlement conference and Andon's agreement to effect, in addition thereto, the payment of $1,000 for past infringements.

As indicated herein, the parties then exchanged several proposed drafts which finally resulted in the final agreement attached as Exhibit 14 which virtually literally includes all of the terms as worded in Andon's proposed draft attached as Exhibit 13.

Centrix is at a loss to understand why Andon refuses to execute the final draft (Exhibit 14) which embodies all of the substantive terms upon which the parties agreed, which are phrased in language set forth in Andon's own draft, attached as Exhibit 13.

Paragraph 8 of Andon's last draft (Exhibit 13) was not included in Centrix's final draft agreement (Exhibit 14) because it is considered to be superfluous and self-serving, and imposes no obligation on either party. Also, the form of the Stipulated Dismissal attached as Exhibit C to Andon's draft (Exhibit 13) appear to be ambiguous and inconsistent inasmuch as the dismissal of Andon's Counterclaims I, II, III and IV with prejudice and not the affirmative defenses is not logical, reasonable or consistent when it is noted the affirmative defenses are a mirror image of the counterclaims. Further, Andon had previously agreed to the form of the Stipulation of Dismissal attached as Exhibit C to Centrix's final draft, Exhibit 14. Reference is made to Exhibit C attached to Andon's draft (Exhibit 12) and Exhibit A attached to Andon's draft (Exhibit 10). Not having objected to the form of the Stipulated Dismissal with Prejudice and Andon having on at least two occasions agreed to the form of the Stipulated Dismissal with Prejudice as attached to the

24

final agreement (Exhibit 14), cannot now seek to nullify the settlement reached by taking objection to the form of the Stipulated Dismissal with Prejudice, after an agreement in fact has been reached.  And particularly not when there is nothing onerous in the form of the Stipulated Dismissal with Prejudice attached to the final draft (Exhibit 14). In fact, it is quite standard in matters resolved by settlement for purposes of finality.

Considering the record in its entirety and the applicable law, the parties have indeed reached an enforceable settlement agreement.  Reference is made to Enterprise Rent-A-Car Co., supra, wherein the Court found that Rent-A-Wreck's offer made in a letter dated April 20 to the effect that Rent-A-Wreck offered to discontinue the use of an accused phrase and use in lieu thereof a different non-infringing trademark, and which Enterprise orally accepted in a telephone call, resulted in an enforceable settlement agreement.

As noted by the Court in Core-Vent Corp. v. Implant Innovations, Inc., supra:

> "So long as the core settlement is
> accepted, we have a settlement.  I do not
> expect the parties to try to negotiate new
> terms in words that may not have been expected
> by you."

25

In Core-Vent, supra, the Court further noted that "Since contractual obligations are to be ascertained from objective manifestation of intent, [Andon's] mental reservations are legally irrelevant." Citing David Massif Assoc. v. United States, 557 F.2d 249, 257 (Ct. Cl 1977).


**D.    REQUEST FOR STAY OF DISCOVERY PENDING RESOLTUION OF ATTACHED MOTION TO ENFORCE THE SETTLEMENT AGREEMENT.**

Currently, the parties are proceeding with discovery pursuant to the outstanding Parties Planning Meeting and Report filed on or about August 25, 2003.  This stay is requested so as to avoid the unnecessary expenditure of time, money and energy of the respective parties in undertaking continued discovery that will include the taking of depositions of several fact witnesses, preparing expert reports and the deposing of experts, and the filing of necessary motions relating to the unresolved discovery issues which will all be rendered moot if Centrix's motion to enforce the Settlement Agreement reached is granted.  It makes good practical sense to stay any further discovery pending the Court's resolution of Centrix's Motion to Enforce the Settlement Agreement for all of the reasons stated herein.  Further, neither party would be prejudiced by granting the stay, and the Court would be relieved of

26

its burden of resolving any discovery dispute while Centrix's Motion to Enforce the Settlement Agreement is pending.  Reference is made to Rule 1 of Fed.R.Civ.P., which expresses that the rules that govern procedure in the Federal District Court shall be construed and administered to secure the just, speedy and inexpensive determination of every action.

Almost immediately following the filing of this lawsuit, the parties have expended a considerable amount of time, money and energy in attempting to find an amiable resolution as noted by the extensive settlement discussions reiterated herein.  In addition, Andon's requested numerous extensions of time for filing its Answer to the Complaint. Andon also requested extensions of time to respond to Centrix's written discovery requests.  As of this writing, Andon has yet to respond to Centrix's Interrogatories and Requests for Documents and Things that were served on Andon on November 7, 2003.  Andon's request for delay at all times was predicated upon the reason that the parties were discussing settlement, which the parties have now reached, and which Andon now refuses to acknowledge.

The Court is also urged to note that the pleadings are not yet closed, as there is currently pending before the Court Centrix's Rule 12 Motion to Dismiss certain of

Andon's Counterclaims and/or affirmative defenses. Andon's procrastinations and its refusal to now acknowledge the settlement reached is seriously prejudicing Centrix and has preempted Centrix's ability to effect discovery within the time agreed to. Therefore, it is requested that the Court stay discovery pending the resolution of this Motion and/or in the alternative, extend the dates of the current scheduling plan of August 25, 2003 by ninety (90) days. This is Centrix's first request for an extension relating to discovery.

## C O N C L U S I O N

In view of the facts, attached exhibits, the reasons stated herein and of the applicable law, it is requested that the Court grant Centrix's Motion to enforce the settlement and to stay discovery pending the resolution of this motion. In the event the motion is not granted, it is requested that the deadlines stated in the current Scheduling Plan filed on August 25, 2003, be extended ninety (90) days for the reasons stated.

Respectfully submitted,

_____
Arthur T. Fattibene, CT06916
Counsel for Plaintiff
Fattibene and Fattibene
2480 Post Road
Southport, CT 06890
Tel 203-255-4400
Fax:  203-259-0033

28