UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CENTRIX, INC.,

    Plaintiff,

v.

ANDON BRUSH COMPANY, INC.,

    Defendant.

Civil Action No. 3:03 CV 703 (CFD)

MARCH 3, 2004

---

**DEFENDANT, ANDON BRUSH COMPANY, INC.'S MEMORANDUM IN RESPONSE TO PLAINTIFF, CENTRIX INC.'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO STAY DISCOVERY AND/OR EXTEND THE DISCOVERY DEADLINES**

---

Defendant Andon Brush Company, Inc., respectfully submits this Memorandum In Response To Plaintiff, Centrix Inc.'s Motion to Enforce Settlement Agreement and to Stay Discovery and/or Extend the Discovery Deadlines.

## STATEMENT OF FACTS

This is an action in which the plaintiff, Centrix Inc. ("Centrix") alleges infringement of two U.S. Patents relating to a form of dental brush. One patent is a utility patent, the other is a design patent. Centrix also asserts related claims of unfair competition. The defendant, Andon Brush Company, Inc. ("Andon") denies infringement of the patents, challenges the validity of the patents on a number of grounds, and asserts counterclaims for a declaratory judgment of invalidity, unenforceability, and non-infringement (Count I), for misappropriation of trade

secrets and confidential information (Count II), for interference with prospective economic advantage (Count III), and for unjust enrichment (Count IV).

A settlement conference was conducted by Magistrate Judge Garfinkle on December 6, 2003. The conference was attended by principals from the parties to this action, as well as by counsel for those parties. The settlement conference did result in some progress towards the parties reaching an agreement to resolve this matter. The issues discussed at the settlement conference were (1) whether Andon would cease manufacturing and selling the brush that was accused of infringing the patents at issue, (2) whether Andon would relinquish a defense that its principal, Robert Newell, was a co-inventor of the subject matter of the patent,[1] and (3) whether there would be any payment from Andon to Centrix. The discussions at the conference did not include any discussion concerning a reservation of any right by Centrix to commence any future action on the patents against Andon, nor any discussion of the manner in which the claims in the pending action would be dismissed. See Exhibit 10 to Fattibene Declaration.

At the conference, Andon was considering favorably the proposal that it cease manufacturing the accused brush. The parties did not reach any agreement at the conference with respect to the issue of compensation. With respect to the issue of relinquishing its defense relating to inventorship (i.e., the defense that patent is invalid for failing to include Mr. Newell was a co-inventor), counsel for Andon was informed at the conference that a motion had been made under Rule 12 with respect to the issue of co-inventorship. Andon's new counsel had not yet received those motion papers. As a result, Andon was not in a position at that time to make a determination as to whether it would be willing to relinquish that claim. Accordingly, Judge

---

[1] A patent will be invalid unless it is issued to all of the inventors. 35 U.S.C. § 116; Bourne v. Jones, 207 F.2d 173 (5th Cir. 1953), cert. denied, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398 (1953).

Garfinkle directed that Andon respond by December 12, 2003, on the issue of whether it would be willing to relinquish that claim as a part of a settlement.

By letter of December 12, 2003, Andon's counsel responded by stating:

> Andon Brush Company, Inc. is willing to settle this matter by entering into a settlement agreement which include the following provisions:
>
> 1. Andon Brush Company, Inc., will cease to manufacture, sell, offer to sell or use its present "cobra" brush as a disposable dental brush, and will agree not to otherwise infringe any valid claims of U.S. Patent No. 5,001,803;
>
> 2. Andon Brush Company, Inc. makes no concession of validity or infringement;
>
> 3. Andon Brush Company, Inc. and Robert Newell will relinquish any claim of inventorship with respect to U.S. Patent No. 5,001,803;
>
> 4. In exchange for the relinquishment of any claim of inventorship, Centrix, Inc., will waive any and all claims for monetary compensation for any alleged infringement up to the time of the signing of a settlement agreement. [Fattibene Declaration, Exhibit 1].

Thus, according to the very terms of the December 12 letter, any settlement would require entry into a settlement agreement which agreement would not make any concession of validity or infringement.

Centrix's response to the December 12 letter was a letter dated December 17, 2003. In that letter, Centrix's counsel stated, *inter alia*:

3

> Centrix regrets that Andon and Bob Newell rejected Centrix's offer.
>
> . . . As a consequence thereof, Centrix is withdrawing all offers previously made.
>
> \* \* \*
>
> Since the settlement appears to have reached an impasse . . . . . [Declaration of Kenneth L. Winters dated March 1, 2004 (hereinafter "Winters Declaration") at Exhibit A].

Thus, as of the December 17 letter from Centrix's counsel, it is admitted by Centrix that there is no settlement because Andon rejected Centrix's offer, that Centrix was withdrawing all offers for settlement, and that settlement appeared to have reached an impasse.

By letter dated December 18, 2003 Andon's counsel confirmed that the previous day it had increased its settlement proposal to include a payment of $1,000.00 to Centrix. In response thereto, Centrix's counsel sent a letter dated December 22, 2003 in which counsel stated that he "had no authority to accept or reject that offer" and that '[w]hen Centrix has had an opportunity to consider Andon's monetary offer, I will so advise you." (Winters Declaration, Exhibit B).

Thus, as of December 22, 2003, the only offer of settlement that was outstanding was the offer set forth in Andon's December 12, proposal to which was added provision for a monetary payment to Centrix. As noted in the December 12 letter, that proposal included the term that there will be no concession of validity or infringement by Andon. As of December 22, 2003, Centrix had not accepted that offer.

By letter dated December 31, 2003, Centrix's counsel indicated that Centrix "is willing to settle the above dispute upon the terms previously discussed at the settlement conference, which now includes Andon's agreement to accept the monetary offer of $1,000.00 that Centrix had suggested at the settlement conference." (Fattibene Declaration, Exhibit 3). Nothing was stated

4

in this letter that Centrix was rejecting Andon's term that there will be no concession of validity or infringement.

By letter of January 8, 2004, Andon's counsel stated:

> This letter will confirm our understanding that the parties are in agreement to settle this matter upon the terms that had been discussed at the settlement conference, i.e., Andon Brush Co. will discontinue the "cobra" style brush and the "Reliance" brush as previously manufactured and sold, Andon Brush Co. will agree not to infringe the utility patent or the design patent which are the subject of this action, Andon Brush Co. will pay $1,000 to Centrix, Andon will agree that Robert Newell is not an inventor of the invention claimed in the patents in suit, and all claims in the action will be dismissed. [Fattibene Declaration, Exhibit 10].

Thus, as of January 8, 2004, the extent to which an agreement had been reached by the parties was that there was agreement (1) to discontinue the accused brushes, (2) and agreement not to infringe either the utility or the design patent in suit, (3) payment of $1,000.00 to Centrix, (4) agreement by Andon that Mr. Newell is not an inventor of the inventions claimed in the patents, and (5) the claims in the action will be dismissed. The agreement set forth in this letter does not specify that the dismissal would be with prejudice, nor does it provide the dismissal of anything other than the claims asserted in the complaint and counterclaims.

As to the additional terms that Centrix had added to its *proposed* form of settlement agreement which was sent to Andon's counsel, the letter from Andon's counsel provided:

> Upon reviewing your proposed form of settlement agreement, it appears that several revisions are necessary. Your proposed form of agreement fails to recite the existence of the counterclaims by Andon, and it also includes a provision for referring certain orders to Centrix that was not part of the settlement discussions. The form of settlement agreement should include for the benefit of all parties a provision that there is no admission of liability by any party as to any of the claims asserted in the litigation, and should also include a mutual release of the claims that are settled by the agreement. Lastly, Centrix's proposed provision that the agreement shall not preclude a re-

5

>institution of a patent infringement action under the specified circumstances should be made mutual by including language that the agreement shall not preclude the assertion of any defenses other than those relinquished by the settlement agreement. Several other clarifications and corrections primarily of a linguistic and/or typographical nature also appear warranted. [Fattibene Declaration, Exhibit 10].

Thus, it is clear that as of January 8, 2004, Andon had not and was not agreeing to any settlement in which there was any admission of liability or of the validity of the patents in suit, and that if Centrix was reserving an ability to re-institute a patent infringement action the settlement agreement must also include a provision that the settlement agreement does not preclude the assertion of defenses other than those relinquished in the agreement by Andon. On this latter point, Andon's counsel countered Centrix's reservation of a right to re-institute a patent infringement action with the inclusion of a provision that "nor shall anything in this Settlement Agreement be construed to preclude Andon from asserting all legal and equitable defenses to any such action except those that are expressly relinquished herein." (Fattibene Declaration, Exhibit 10 at paragraph 10). In the proposed form of settlement agreement, at paragraph 5, Andon relinquished the defense of the failure of the patent to name all inventors.

In response to the January 8 letter, Centrix's counsel unambiguously proclaimed:

>Please be advised that Centrix cannot agree to your revised version of the Settlement Agreement. [Fattibene Declaration, Exhibit 11].

Thus, according to Centrix, as of January 12, 2004, there was no agreement on all of the terms of a settlement.

Although Centrix's counsel took issue with various revisions to the form of settlement agreement proposed by Andon's counsel, *nowhere in the January 12, 2004 letter from Centrix's counsel was any disagreement expressed with the provisions of what was paragraph 10 of the*

6

*revised form of settlement agreement, i.e., the provision that Andon not be precluded from asserting all legal and equitable defenses if an infringement action is re-instituted.*

Centrix's counsel proffered a revised form of settlement agreement. Even though Centrix's counsel's January 12 letter did not take any issue with or note any change in the form of settlement agreement with respect to the issue of the preservation of defenses, the revised form of agreement sent by Centrix's counsel proposed that "[n]othing in this Settlement Agreement shall be construed to preclude Andon from asserting and legal and/or equitable defense to any such patent infringement action subject to this provision that is not barred by the dismissal of this action." (Fattibene Declaration, Exhibit 11 at paragraph no. 8).

In response to Centrix's counterproposal on the issue of the preservation of defenses, Andon's counsel wrote:

> The revision to my proposal for what is paragraph number 8 in your latest version of the settlement agreement is ambiguous and confusing. My original language is very specific that the only defenses being relinquished should a patent infringement action be renewed are those defenses that are expressly relinquished in the settlement agreement. Centrix should have no objection to this language unless it is intending to assert, should any future litigation arise, that other defenses not identified in the agreement are also relinquished. [Fattibene Declaration, Exhibit 12].

Thus, as of the January 14, 2004 letter from Andon's counsel, Andon still had only expressed agreement to a settlement in which all defenses except the defense involving the issue of inventorship would remain available to Andon in the event that a future patent infringement action were brought. Under cover of the January 14 letter, Andon's counsel again remained firm that the only defense to be relinquished by the settlement would the defense based on the issue of inventorship and included the prior language in the settlement agreement to that effect.

On January 15, 2004, counsel for the parties conferred by telephone. During that conversation, counsel for Centrix asserted that the language in the proposed settlement

7

agreement for the preservation of all legal and/or equitable defenses was potentially inconsistent with a dismissal of affirmative defenses with prejudice. In response to that assertion, Andon's counsel indicated that any potential inconsistency or ambiguity could easily be removed by modifying the stipulation of dismissal to expressly reflect that defenses were preserved in the event of a future patent infringement action. Andon's counsel undertook to draft such a revision, and the same was sent to Centrix's counsel that very day. (Fattibene Declaration, Exhibit 13).

By letter of January 16, 2004, Centrix's counsel stated that Andon's proposed form of settlement agreement of January 14 "was unacceptable to Centrix." (Fattibene Declaration, Exhibit 14). While some differences remained as to the phrasing of some terms of the form of settlement agreement, one substantive issue which remained unresolved was the preservation of defenses. With respect to that issue, Centrix's counsel wrote:

> I indicated that the dismissal of the counterclaims with prejudice and preserving the affirmative defenses are incompatible. You then suggested that you wanted the opportunity to send me a revised form of a dismissal stipulation for Centrix's consideration.
>
> \*   \*   \*
>
> Also, your proposed form of the Stipulation of Dismissal is totally unacceptable. Your draft of the dismissal stipulation with prejudice is considered to be vague, ambiguous, and legally inconsistent.

Quixotically, while rejecting the last offer of settlement made by Andon, Centrix's counsel simultaneously proclaimed in the January 16 letter that "a settlement had been reached." Significantly, this unilateral pronouncement wholly disregarded the above recited history of negotiations wherein a term consistently included in every proposal made by Andon was that all legal and/or equitable defenses other than the relinquished defense relating to inventorship would be available to Andon in the event of future litigation. The attached form of settlement

8

agreement proposed by Centrix excluded the reservation of defenses that had been a consistent point of all proposals by Andon.

In immediate response to the January 16 letter from Centrix's counsel, Andon's counsel stated:

> . . . I can and will state at this time that a settlement was not reached on the terms you set forth in your letter and your latest draft. Without enumerating all the matters on which the parties did not reach agreement in the course of the settlement discussions, the record is clear that Andon has never agreed to your draft of the settlement agreement and in all drafts of the settlement agreement which were proposed by Andon those drafts included a provision that the only defense relinquished was a defense that Andon and/or Robert Newell were inventors. [Winters Declaration at Exhibit C].

Centrix has now brought a motion, entitled Motion To Enforce Settlement Agreement And To Stay Discovery And/Or Extend The Discovery Deadlines. Andon now responds to that motion.

## ARGUMENT

### POINT I

**FOR A SETTLEMENT TO HAVE ARISEN WHICH IS CAPABLE OF BEING ENFORCED, THE PARTIES MUST HAVE REACHED AN AGREEMENT ON ALL TERMS OF THE SETTLEMENT**

The law governing whether an enforceable settlement has been reached is state contract law of the forum in which the action is pending. See S. & T. Mfg. Company, Inc. v. Hillsborough County Florida, 815 F.2d 676, 678 (Fed. Cir. 1987).

For a settlement to arise, there must be an offer of settlement and acceptance of that offer. Enterprise Rent-A-Car Co. v. Rent-A-Wreck of America, Inc., 51 U.S.P.Q.2d 1213, 1215 (8th Cir. 1999). An essential prerequisite for a valid settlement agreement is that the parties mutually assent to the terms and conditions of the settlement. Millgard Corp. v. White Oak Corp., 224 F. Supp. 2d 425, 432 (D.Conn. 2002). A court only has the authority to summarily enforce a

settlement agreement when the terms of the agreement are clear and unambiguous, and if the parties do not intend to enter a binding agreement without a writing, they will not be legally bound until that condition is met. Id. at 433. A central requirement is that the terms of an alleged settlement agreement be clear and unambiguous. Audubon Parking Associates Ltd. Partnership v. Barclay and Stubbs, Inc., 225 Conn. 804, 811, 626 A.2d 729 (1993).

In Millgard, the court denied the enforcement of an alleged oral settlement agreement, finding that the movant

> has not shown that all of the parties mutually assented to all of the essential terms and conditions of the settlement and did not intend to be bound by the settlement agreement without a written agreement. For example, while the parties may have reached an agreement on a number of terms in a fairly complex settlement agreement, they apparently did not resolve the significant issue of the $250,000 credit should National Union's security interest be subordinated. Thus, at least one of the important terms of the agreement was neither clear and unambiguous, nor agreed to. [224 F. Supp. 2d at 433].

Thus, the failure of parties to agree upon a term will preclude the existence of an enforceable settlement agreement.

The existence of a draft settlement agreement, which the parties have not signed and with respect to which negotiations remain ongoing, was also deemed is indicative of the absence of a settlement agreement in Wang Laboratories, Inc. v. Applied Computer Sciences, Inc., 958 F.2d 355, 359 (Fed. Cir. 1992). This is because a court does not have the power to create an agreement for the parties when there has been no meeting of the minds and the parties have not agreed on the unsigned draft agreement. Id.

As applied to the present matter, the facts of record before the Court on this motion are capable of supporting only one result, i.e., that the parties had not reached agreement on all the terms of a settlement. Despite having reached an agreement on four terms (i.e., cessation of the

10

manufacturing and sale of the accused brush, no concession of validity or infringement, relinquishment of any defense of inventorship, and payment of $1,000.00), the parties had not reached an agreement to settle the litigation because agreement had not been reached as to other issues. The record shows that after the December 18 revision of Andon's offer, Centrix sought to include in the settlement additional terms, including a term allowing Centrix to re-institute a patent infringement action. However, the record equally shows that with respect to each inclusion of such a provision in the draft agreement by Centrix, any acceptance of the same was subject to and conditioned upon the inclusion of a provision that preserved all defenses to Andon except the defense relating to inventorship. Indeed, Centrix's counsel acknowledges at page 24 of its brief that Centrix's final draft agreement did not include provisions from Andon's last offer. By this very language, Centrix admits that (a) the documents which were exchanged were merely drafts, and (b) the parties had not reached agreement on the terms of the settlement.

Not only does the record fail to show a clear and unambiguous agreement with respect to these additional terms, but Centrix's own counsel has referred to the terms as "vague, ambiguous, indefinite and not final" (Fattibene Declaration, Exhibit 11) and "vague, ambiguous, and legally inconsistent" (Fattibene Declaration, Exhibit 14). Thus, the clarity and unambiguity that is required for an enforceable settlement agreement is, according to Centrix's own counsel, lacking in the present matter. Indeed, the record before the Court clearly and unambiguously shows that the parties never reached an agreement with respect to the provision for the re-institution of a patent infringement claim and the preservation of Andon's defenses thereto (except for the defense relating to inventorship that was to be relinquished as part of the settlement agreement).

Thus, any motion to enforce a settlement based upon any of the terms contained in the proposed settlement agreements that were exchanged as part of the negotiation process (and none

of which were fully accepted by either party) must be denied for lack of agreement upon those additional terms.

Centrix argues that the preservation of defenses is not consistent with the dismissal of the counterclaims. Such an argument completely fails to recognize the distinction between a claim in which affirmative relief is sought, and a defense as to which affirmative relief need not be sought. See, e.g., Nickerson v. Martin, 34 Conn. Supp. 22, 28, 374 A.2d 258 (Conn. Super. 1976) (recognizing that affirmative recovery may had with respect to set off, but not with respect to the defense of recoupment). Such a distinction between affirmative relief and a defense is well recognized in the law relating to patents. Thus, for example, 35 U.S.C. § 116 allows for a *defense* that a patent is invalid for failure to name all inventors. An entirely separate section, 35 U.S.C. § 256, provides for an affirmative claim for amendment of a patent to include omitted inventors. Similarly, other affirmative claims can be dismissed without requiring a barring of affirmative defenses. The effect is merely that the party dismissing the claims may not thereafter seek *affirmative relief* based upon those claims, but may still assert claims *defensively*, just as if affirmative defenses had been asserted in the action without any counterclaims.

Here, Centrix can point to many offers made by Andon after January 8, 2004 with respect to the additional terms sought by Centrix. But in each instance, Andon's insisted upon a preservation of defenses in exchange for Centrix's insistence upon a reservation of a right to re-institute a patent infringement action. (Thus, Centrix's argument at page 26 that unexpressed mental reservations do not preclude a finding of agreement is inapposite to present matter where the reservation was expressed to the other party). Centrix expressly rejected each such offer by Andon. Moreover, as to Centrix's offers, none of Centrix's offers in which Centrix sought to reserve a right to re-institute a patent infringement action were accepted by Andon without the

countervailing provision that Andon's defenses (except for the defense concerning inventorship) be preserved. Thus, while Centrix may be able to point to offers and counteroffers, it cannot point to a single offer that was accepted in its entirety.

The history of the negotiations between the parties, and the culmination of those negotiations with the present motion, shows that Centrix is trying to have the Court create an agreement for the parties where none existed by pointing to several provisions as to which the parties were no longer in dispute while at the same time ignoring that an agreement had not been reached whereby Andon would relinquish any defenses it may have in any re-instituted patent infringement action. Simply put, Centrix's motion seeks to obtain the benefits which Andon was willing to offer by way of settlement while at the same time denying Andon one of the reciprocal benefits that were a part of its offer (i.e., denying a preservation of defenses in the event an infringement action were re-instituted).

While the record does not support any finding of an enforceable settlement for the reasons set forth above, even if one were able to conclude that a settlement had been reached such a settlement would have to be much more limited in scope than that asserted by Centrix in this motion. By claiming that a settlement has been reached, Centrix may be deemed to have accepted the December 12, 2003 four point offer as supplemented by the December 18, 2003 addition of the term for payment of $1,000.00 to Centrix. Thus there was agreement on the first three issues set forth in the December 12, letter, i.e.,

> 1. Andon Brush Company, Inc., will cease to manufacture, sell, offer to sell or use its present "cobra" brush as a disposable dental brush, and will agree not to otherwise infringe any valid claims of U.S. Patent No. 5,001,803;
>
> 2. Andon Brush Company, Inc. makes no concession of validity or infringement;

    3. Andon Brush Company, Inc. and Robert Newell will relinquish any claim of inventorship with respect to U.S. Patent No. 5,001,803;

plus a provision that Andon would pay $1,000.00 to Centrix. If Centrix were seeking to enforce a settlement consisting of *only* those terms, and nothing more, Andon could not dispute that such terms were agreed upon and that only those terms would be capable of being enforced. There would, of course, be no agreement for reservation of a right by Centrix to re-institute a patent infringement action, and there would be no loss of any affirmative defenses by Andon inasmuch the December 12 terms as supplemented by the December 18 provision did not include a dismissal of affirmative defenses with prejudice.

Based upon the foregoing, the motion to enforce a settlement must be denied.

## POINT II

## THE COURT SHOULD NOT STAY DISCOVERY, BUT SHOULD EXTEND THE DISCOVERY PERIOD

So little progress has been made with respect to preparing this action for trial that discovery should not be stayed.

On October 27, 2003, Andon filed its counterclaims. In response thereto, Centrix filed a motion under Rule 12, and as of this date has not filed an answer. While the parties (at the suggestion of Magistrate Garfinkle) agreed to toll responses to discovery while settlement negotiations were on-going, Centrix nonetheless continued to proceed with serving requests for admission to which responses were duly made. However, immediately upon the failure of settlement negotiations, Centrix had no qualms about insisting that Andon respond to outstanding discovery requests. (Fattibene Declaration, Exhibit 14). And indeed, it appears that Centrix was demanding such responses notwithstanding its position that a settlement had been reached. Thus, Centrix had no hesitancy to require Andon to incur expenditures of time and

14

money to respond to discovery even though Centrix was asserting that the action had been settled. Indeed, notwithstanding the pendency of this motion to stay discovery, Centrix propounded additional interrogatories on Andon on March 1, 2004.

Now, however, when the shoe is on the other foot, and Centrix has been served with discovery as to which it must now expend resources, Centrix urges that discovery should be stayed. The effect of such a course is that Centrix has received answers to interrogatories, responses to requests for documents, and responses to requests for admission, while now seeking to prevent Andon from obtaining even its initial discovery. Should such occur, Andon's preparation of the case towards trial would be wholly frustrated and blocked. Indeed, not only has Andon not received an answer to its counterclaim, but it will be denied discovery with respect to the claims already asserted against it. Meanwhile, Centrix had pending a motion to dismiss for failure to state a claim which it has converted into a motion for summary judgement by presenting facts outside the pleading. Andon has opposed that motion, in part, based upon a lack of discovery with respect to the matters asserted by Centrix in that motion.

There is no valid reason shown for Centrix to seek to stay discovery. To the extent that Centrix asserts that a settlement was reached, the record shows that the only terms agreed upon were those set forth in the December 12, 2003 and December 18, 2003 letters from Andon's counsel. All Centrix need do is acknowledge that such terms comprise the settlement between the parties, and action is then settled. However, to the extent that Centrix asserts that any additional terms are part of a settlement, such a claim is not supported by the record for the reasons set forth above. Hence, there is no such settlement that could justify staying discovery.

The motion by Centrix to stay discovery is simply a shallow attempt to prevent Andon from preparing for trial and from obtaining discovery that may be relevant to the pending motion. For these reasons, Andon opposes any stay of discovery.

Andon does, however, join in the request that *all* dates set forth in the Scheduling Plan be extended. Such an extension should be for at least ninety days in light of the time during which the parties were pursuing settlement instead of discovery at the behest of Magistrate Garfinkle, plus to allow for appropriate discovery to be taken after an answer has been filed to the counterclaims. The ninety day extension should be without prejudice to the defendant seeking further extension of time to the extent that that filing of an answer to the counterclaims is further delayed.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that the motion by Centrix to enforce a settlement and the motion to stay discovery be denied in their entirety. It is further submitted that the Scheduling Plan be extended.

Respectfully submitted,
ANDON BRUSH COMPANY, INC.

By: _____
Matthew C. Mason (ct 15291)
Gregory and Adams, P.C.
190 Old Ridgefield Road
Wilton, CT 06897
(203) 762-9000 (Tel.) * Fax (203) 834-1628
mmason@gregoryandadams.com

Of Counsel:
    Kenneth L. Winters, Esq. (ct 25530)
    G. Glennon Troublefield, Esq.
    Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein
    5 Becker Farm Road
    Roseland, NJ 07068
    Phone: (973) 994-1700 * Fax: (973) 994-1744
    Email: kwinters@carellabyrne.com

## CERTIFICATE OF SERVICE

I hereby certify that, on March 2, 2004, a true and correct copy of the foregoing was served by first class mail, postage prepaid, upon all counsel of record as follows:

Arthur T. Fattibene, Esq.
Fattibene & Fattibene
2480 Post Road
Southport, CT   06490
203-255-4400

_____
Matthew C. Mason