IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
At Hartford

CENTRIX, INC.

    Plaintiff/Counter-Defendant

v.                                  Civil Action No.
                                      3:03-CV-703(CFD)(WIG)

ANDON BRUSH COMPANY, INC.,

    Defendant/Counter-Plaintiff           May 12, 2004


**PLAINTIFF, CENTRIX, INC.'S MEMORANDUM IN OPPOSITION
TO DEFENDANT, ANDON BRUSH COMPANY,  INC.'S
MOTION TO ENFORCE SETTLEMENT AND TO STAY DISCOVERY**

                                             Arthur T. Fattibene, CT 06916
                                             Paul A. Fattibene, CT 12760
                                             Attorneys for Plaintiff,
                                             Centrix, Inc.
                                             2480 Post Road
                                             Southport, CT 06890
                                             Tel: 203-255-4400;
                                             Fax: 203-259-0033

**ORAL
HEARING
REQUESTED**

**NATURE OF PROCEEDINGS**

On or about April 27, 2004, Plaintiff, Centrix, Inc. (Centrix) was served with Defendant, Andon Brush Company, Inc.'s Motion To Enforce Settlement And To Stay Discovery. This is Centrix's Memorandum with supporting Declaration OF Dr. William B. Dragan and attached exhibits in opposition to Andon's Motion.

**STATEMENT OF FACTS**

As indicted in the attached Declaration of Dr. William B. Dragan, Centrix is a privately owned corporation. Centrix was founded by Dr. William B. Dragan in 1970. Since that time, Centrix has grown and is now recognized within the dental profession, domestically and internationally, as a manufacturer and distributor of innovative applicators and sundry other dental products.

Andon is a corporation that was initially organized by Centrix and two other individuals, Messrs. Gerald Robbins and Robert Newell. Gerald Robbins, prior to becoming a principle in Andon, was involved in his family's business doing business as the Applicator Company. Robert Newell was employed by the Applicator Company as a machinist for maintaining the Applicator Company's machinery and equipment. The Applicator Company's business was the

making and manufacturing of various applicators and brushes for others.

In the latter part of 1988, Centrix developed a novel brush construction, particularly suitable for performing certain dental procedures.  A patent application directed to the novel brush construction was filed on or about March 20, 1989 and the patent thereon was granted on March 26, 1991.

In 1989, Centrix sought out a manufacturer having the capability of producing the novel brush according to Centrix's specifications.  After a search for such a manufacturer, Centrix selected the Applicator Company as its source for supplying Centrix with the novel brushes for which the patents in suit were granted.  In September 1989, Centrix and Applicator Company entered into a supply agreement whereby the Applicator Company would supply Centrix with its brush requirements.

About December 1989-January 1990, Mr. Gerald Robbins informed Centrix that the Applicator Company was on the verge of bankruptcy and was about to go under.  As the sales of the novel brushes was rapidly increasing, losing the Applicator Company as Centrix's only source of supply posed a serious problem.  As a result of the these turns of events, Centrix, together with Gerald Robbins and Robert

2

Newell, decided to organize the Andon Brush Company as a corporation to manufacture the novel brushes and to supply the same to Centrix.  In February 1990, the Andon Brush Company was formed, organized and in the business of supplying Centrix with the novel brushes.  The stock of the Andon Brush Company was equally divided between Centrix, Mr. Robbins and Mr. Newell.

For some ten (10) years, Andon functioned as Centrix's exclusive supplier of the now patented brush applicators. In the year 2000, Gerald Robbins sold his interest in Andon to Robert Newell, giving Robert Newell a controlling interest in Andon.  In the year 2000, Mr. Newell, now two-thirds owner of Andon, decided to make Centrix's patented brush construction for sale under Andon's own brand name without Centrix's consent and thereby commenced infringing the patents in suit.  (Declaration of Dr. William B. Dragan, Paragraphs 1, 36-67).

**THE SETTLEMENT DISCUSSIONS**

Almost from the initiation of this lawsuit on or about April 17, 2003, the parties have engaged in settlement discussions.  Initially, this matter was referred to Magistrate Judge Garfinkel on or about September 2, 2003 (Doc. 12).  Judge Garfinkel scheduled a settlement

3

conference for December 3, 2003, at which the parties and their respective counsels appeared.  While some progress toward settlement was made, no agreement or settlement was reached.  The settlement conference ended on the note that the parties would continue their settlement discussions privately.

Following the settlement conference of December 3, 2003, counsel for the respective parties exchanged numerous proposed draft agreements to the point that an agreement was finally reached, as indicated in Centrix's January 16, 2004 Settlement Agreement (Exhibit 5B) which is virtually a copy of Andon's proposed draft Settlement Agreement attached hereto as Exhibit 8.  As a result thereof, Centrix filed a Motion To Enforce the Settlement, which is memorialized in the Centrix draft of the January 16, 2004 agreement (Exhibit 5B).  Centrix's Motion To Enforce the January 16, 2004 Settlement Agreement has been fully briefed and is currently pending before the court. Significantly, Andon does not dispute the terms of this Agreement.  Andon merely seeks to avoid the settlement agreement reached as of January 16, 2004 (Exhibit 5B) on the fictitious and nebulous ground that Andon has not agreed to the dismissal of its affirmative defenses with

4

prejudice as required by the Agreement of January 16, 2004 (Exhibit 5B).

Subsequent to Centrix's filing of its Motion To Enforce The Settlement Agreement of January 16, 2004, on or about March 5, 2004 Judge Garfinkel (sui sponti) scheduled a follow up Settlement Conference for April 16, 2004, at which time the parties and their respective counsels again appeared.

At the April 16, 2004 conference, the conversations were primarily directed to Andon's allegations and assertions that it cannot agree to the dismissal of its affirmative defenses with prejudice, as Andon fears being again sued for infringement of the patents now in suit at some future date.[1]  Centrix's position is that there can be no future infringement claim if Andon does not breach the agreement that Andon has said it would not do, viz. that Andon would immediately cease and desist the manufacture and sale of the accused "Cobra" styled brushes and the "Reliance" styled brushes, and that Andon "will not make, have made, use and/or sell any brush, either directly or indirectly, that will infringe said '803 and '142 patents, without the expressed written consent from Centrix."

---

[1] Andon's paranoia of being suited on the patents in suit in the future is bogus, when Andon has agreed to cease making and selling the accused infringing product and that Andon agreed not to infringe the patents in suit.

5

The discussions at the April 16, 2004 conference evolved to a point that Andon desired freedom of suit in the future on a host of hypothetical brush constructions, to which Centrix could not possibly agree to without receiving a competent opinion of counsel as to whether or not the hypothetical conceptual designs Andon attempted to suggest would infringe or not infringe the claims of the patents in suit.  In effect, Andon's discussions during the settlement conference on April 16, 2004, was <u>nothing more than an attempt to secure Centrix's input as to how Andon might design around the claims of the patents in suit</u>.

However, at the settlement conference Centrix did positively indicate that certain two brush constructions would not infringe the claims of the '803 patent.  They were a brush that had a totally solid handle throughout the length thereof or a brush having a solid handle having a pre-bent or fixed angle adjacent the brush end which is fixed and not intended to be flexed or bent to any other adjusted angle, or a Biederman type brush.  These were the only brush constructions Centrix indicated Andon could make and not infringe the claims of the patents in suit.

Andon also raised the issue of its existing inventory. There was some discussion concerning the payment of a royalty.  However, no definite agreement as to this issue

6

was reached as no time period was mentioned or established for Andon to dispose of its inventory.

The meeting ended on the note that Andon would submit to Centrix in writing language describing the non-infringing brush construction Dr. Dragan indicated would be non-infringing.  Judge Garfinkel was advised by Centrix's counsel that any discussions had at the conference and/or the discussions entertained by the parties would be without prejudice to Centrix's then pending Motion To Enforce the Settlement memorialized in Centrix's agreement dated January 16, 2004 (Exhibit 5B).  Judge Garfinkel so acknowledged the same.

**HAPPENINGS SUBSEQUENT TO THE CONFERENCE OF APRIL 16, 2004.**

On April 19, 2004, Andon's counsel submitted a letter (Exhibit 1) in which Andon "attempted to draft some language" relating to brushes that "would not be deemed to infringe the patents in suit."  Andon proceeded to set forth a "laundry list" of alleged non-infringing brush constructions which were inconclusive and/or not discussed at the conference.  For example, Andon asserts that Centrix agreed that Andon would be free to make "Any brush that is prior art to the patents or which is obvious based on such prior art."  Centrix certainly did not agree to this, nor

7

can Centrix ever agree to any such language as it is clearly indefinite, vague and inconclusive. Nor did Centrix agree that Andon could make any other brush construction other than those set forth in Dr. Dragan's attached Declaration.

On April 21, 2004, Centrix responded in a letter (Exhibit 2) to Andon's letter of April 19, 2004 (Exhibit 1), rejecting Andon's "laundry list" of alleged non-infringing brush constructions. Centrix also withdrew any consideration of the proposal relating to Andon's alleged inventory, as Centrix had no means for policing the disposal of any alleged Andon inventory. Nor was any time period for effecting the disposal of Andon's alleged inventory even discussed at the April 16, 2004 conference. The alleged inventory disposal became a non issue, and Andon was unequivocally so advised (Exhibit 2).

Andon's counsel, in a letter dated April 21, 2004 (Exhibit 3) in response to Centrix's letter dated April 21, 2004 (Exhibit 2), expressly stated "My letter (the April 21, 2004 letter Exhibit 3) <u>was not intended to constitute the complete settlement agreement</u>." (Emphasis added).

After Centrix had <u>unequivocally rejected Andon's proposals of April 19, 2004 (Exhibit 1), and unequivocally refused to further consider the disposal of Andon's</u>

8

<u>inventory</u> (Exhibit 2), Andon, on April 22, 2004, nevertheless submitted to Centrix a draft agreement (Exhibit 4A) which literally embodies all of the provisions set forth in Centrix's Settlement Agreement dated January 16, 2004 (Exhibit 5B which is the subject of Centrix's pending Motion To Enforce), plus two additional provisions, viz. paragraphs 3 and 10 of Exhibit 4A, that was first expressed in Andon's letter dated April 19, 2004 (Exhibit 1), and which were unequivocally rejected on April 21, 2004 (Exhibit 2) before Andon's alleged settlement agreement (Exhibit 4A) was submitted to Centrix on April 22, 2004.

On April 26, 2004, Centrix submitted to Andon a letter together with a Modification (Exhibit 5A) to the Settlement Agreement dated January 16, 2004 (Exhibit 5B), in which Centrix identified the non-infringing structures Centrix would consider as non-infringing structures, and which Modification was being made pursuant to paragraph 11 of the Settlement Agreement dated January 16, 2004 (Exhibit 5B).

On May 3, 2004, Centrix advised Magistrate Judge Garfinkel that Centrix has "no intention of aiding Andon to redesign around the claims of the patents in suit and/or rewriting the claims of the patents in suit" and that unless Andon is agreeable to the Modification (Exhibit 5A) to the Agreement of January 16, 2004 (Exhibit 5B), which

9

Andon now acknowledges (minus paragraphs 3 and 10 of Andon's alleged Agreement of April 16, 2004), "Centrix's time, money and effort would be better spent pursuing discovery".

Accordingly, until Centrix's Motion to Enforce the Settlement Agreement is decided, Centrix has no other recourse but to pursue its discovery efforts pursuant to the Court's current Scheduling Order endorsement of April 14, 2004.  Pursuant to the Court's endorsement of April 14, 2004, Centrix issued Rule 30(b)(6) Notice of Deposition to depose Robert Newell, Andon's designated officer having knowledge of the issues raised by the pleadings on May 3, 2003.  The deponent failed to appear on May 3, 2004.

While a stay of discovery has been requested in the pending motions before the Court, <u>no stay of discovery has been granted</u>.  Andon did not secure any protective order, adjournment or take any action permitted by the Rules of the Fed.R.Civ.P. to adjourn or stay the deposition noticed for May 3, 2004.  Absent any protective order or stay, Centrix, pursuant to the Court's endorsement order of April 14, 2004 and in view of the abbreviated Scheduling Order, had every right to secure the deposition of Andon pursuant to Rule 30(b)(6), Notice of Deposition.

10

In addition to not appearing for deposition, Andon has yet to respond to Centrix's outstanding interrogatories which were due on or about April 1, 2004, and has yet to produce a single document which had been requested months ago.

**A R G U M E N T**

**I.   AN ENFORCEABLE SETTLEMENT AGREEMENT WAS REACHED ON JANUARY 16, 2004, WHICH IS CURRENTLY THE SUBJECT OF CENTRIX'S PENDING MOTION TO ENFORCE THE SAME.**

The enforceable settlement agreement (attached as Exhibit 5B) to the Declaration of Dr. William B. Dragan was reached on January 16, 2004. The settlement agreement of January 16, 2004, is currently the subject of Centrix's Motion To Enforce The Settlement Agreement of January 16, 2004, that was filed on or about February 11, 2004. This Motion has been fully briefed and is currently pending before the Court. Centrix incorporates herein by reference Centrix's motion, including the memorandum, declarations and exhibits to enforce said Settlement Agreement of January 16, 2004. Obviously, the case law cited by Andon in its memorandum in support of its motion to enforce its alleged settlement and the case law cited by Centrix in its Motion and Memorandum to Enforce the Settlement Agreement of January 16, 2004 (Exhibit 5B) weighs heavily in favor of

11

finding that Centrix's settlement agreement of January 16, 2004 is indeed enforceable. Should the Court find that the Settlement Agreement of January 16, 2004 (Exhibit 5B) attached to Dr. Dragan's Declaration is enforceable, then Andon's current motion is rendered moot and of no force and effect.

II. **IN THE EVENT THAT CENTRIX'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT OF JANUARY 16, 2004 (EXHIBIT 5B HEREIN) IS DENIED, ANDON'S MOTION THAT AN AGREEMENT WAS REACHED AT THE APRIL 16, 2004 CONFERENCE MUST BE LIKEWISE DENIED.**

It is evident that no agreement was reached at the April 16, 2004 conference. Had an agreement been reached, Judge Garfinkel <u>would have made the agreement reached a matter of record</u>. Judge Garfinkel did not do so, as no agreement was reached at the April 16, 2004 conference. The only definite understanding that was discussed at the April conference to satisfy Andon's illusory or paranoid fears of future litigation was Dr. Dragan's unambiguous assurances that a brush with a totally solid handle or brush having a solid handle throughout and having a fixed or pre-bent angle formed at the brush end which was incapable of flexing to any other adjusted angle, or a Biederman type brush, would not infringe the patents in suit. See Declaration of Dr. Dragan.

12

It is further to be noted that Andon's alleged Settlement Agreement (Exhibit 4A) <u>literally incorporates all of the terms of Centrix's Settlement Agreement of January 16, 2004</u> (Exhibit 5B) except for the addition to paragraphs 3 and 10 which were first proposed in Andon's April 19, 2004 letter (Exhibit 1). As noted by Dr. Dragan in his declaration, Centrix unequivocally rejected the provisions of paragraphs 3 and 10 of Andon's alleged settlement agreement draft (Exhibit 4A). (See Exhibit 2).

It is not understood how Andon can rationally argue that Centrix had agreed to the terms of paragraphs 3 and 10 of the alleged Settlement Agreement (Exhibit 4A) drafted on April 22, 2004, when Centrix categorically rejected the conditions of paragraphs 3 and 10 before Andon drafted the allege Settlement Agreement (Exhibits 4 and 4A).

It is also significant to note that Andon's proposed Settlement Agreement (Exhibit 4A) <u>literally incorporates all of the terms of Centrix's Settlement Agreement of January 16, 2004</u> (Exhibit 5B). Should a Court deny Centrix's Motion to Enforce the Settlement Agreement of January 16, 2004 on the grounds that the parties have not agreed thereto, a Court would be hard pressed to find that the identical terms found in Andon's alleged Agreement

(Exhibit 4A) would be enforceable.  Andon cannot have its cake and eat it too.

### III.  DECLARATION OF MR. WINTERS SHOULD EITHER BE STRICKEN OR ELSE MR. WINTERS SHOULD WITHDRAW AS COUNSEL.

It cannot be disputed that Mr. Winters, in his Declaration in support of Andon's motion, is effectively testifying as a witness for Andon as to what allegedly transpired at the conference of April 16, 2004.  As noted in the Declaration of Dr. Dragan, Mr. Winters is "parroting" verbatim the alleged testimony set forth in the Declaration of his client.  Rule 3.7 of Connecticut Rules of Professional Conduct expressly states "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness."  An adversary motion is akin to a trial, since a motion may be subject to a hearing wherein evidence is presented by affidavit, declarations, documents and/or live witnesses.  Clearly, Mr. Winters' testimony by way of a declaration to corroborate his client's testimony is grossly improper and prejudicial, and it is certainly in conflict with the testimony of Dr. Dragan as stated in Dr. Dragan's opposing Declaration.

Clearly, statements made by Mr. Winters in his Declaration are that of an advocate witness that is to be

14

taken as proof rather than as an analysis of the proof.  An advocate may explain or comment on the evidence given by others, <u>but he certainly can't give evidence contrary to that of a proper fact witness in an effort to prove his client's cause, be it a motion or a trial</u>.  Mr. Winters Declaration should either be stricken or else Mr. Winters should withdraw as counsel for Andon.

## C O N C L U S I O N

For the reasons stated, it is requested that the Court strike the Declaration of Mr. Winters and further deny Andon's Motion.

Respectfully submitted,

_____
Arthur T. Fattibene, CT06916
Counsel for Plaintiff
Fattibene and Fattibene
2480 Post Road
Southport, CT 06890
Tel 203-255-4400
Fax:  203-259-0033