UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CENTRIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDON BRUSH COMPANY, INC., <br><br> Defendant. | Civil Action No. 3:03 CV 703 (CFD) <br><br><br><br><br> May 24, 2004 |

**DEFENDANT, ANDON BRUSH COMPANY, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AND TO STAY DISCOVERY**

Defendant Andon Brush Company, Inc., respectfully submits this Reply Memorandum In Support of its Motion to Enforce Settlement and to Stay Discovery.

**STATEMENT OF FACTS IN REPLY**
**(Responsive to Pages 1- 11 of Plaintiff's Brief)**

Prior to the commencement of the April 16, 2004 settlement conference, the parties were unable to agree upon the terms of a dismissal in this action. As set forth in more detail in Andon's opposition to Centrix's February 2004 motion to relating to an alleged settlement, the prior negotiations had always included a provision that Andon was relinquishing in the settlement only one defense, i.e., the defense that the patents in suit did not name all of the true inventors. Centrix, on the other hand, sought to have all of Andon's defenses dismissed with prejudice. Andon, however, was not willing to thereby place itself at the mercy of Centrix which

might thereafter trump up a claim of infringement against some other product of Andon by urging a construction of the patent which might well render it invalid. Thus, Andon repeatedly sought in the earlier proposed settlement agreements that the only defense relinquished was the one expressly mentioned therein, i.e., the defense relating to inventorship.

Magistrate Judge Garfinkel's suggested solution to this impasse was to agree upon safe harbors[1] within which Andon could manufacture brushes without fear of unwarranted charges of infringement by Centrix. Under Magistrate Judge Garfinkel's suggested approach, if Andon was given agreed-upon safe harbors, it could then safely agree to a dismissal with prejudice. Thus, the entire purpose of the settlement conference was to determine what features of brushes Centrix would agree would not infringe.

As set forth in the moving papers, the parties agreed that the safe harbor would consist of solid handle brushes, brushes whose handles were not hollow throughout[2], brushes that are manufactured in a pre-bent condition, and brushes which are bendable by means other than the existence of manufactured crimp.[3]

---

[1]  Centrix seeks to mis-characterize the discussions as an attempt to obtain input into designing around Centrix's patent. Such a mischaracterization is totally misplaced. The parties were indeed setting forth parameters of a safe harbor for Andon, defining specific types of features that would be deemed to be non-infringing. Indeed, even after Centrix repudiated the April 16 2004 settlement, Andon was willing to explore an alternative approach suggested by Magistrate Judge Garfinkel of reaching an agreement that *five specific brushes* that are presently manufactured are non-infringing. See, Reply Declaration of Robert L. Newell at Exhibits A and B. Centrix chose to disregard such an approach, which is far from seeking to have Centrix design around its own patent.

[2]  One of the elements claimed in the utility patent at suit is that the dental brush have a handle with a continuous, uninterrupted bore extending therethrough. Unless the accused device has such a structure or its equivalent, it cannot infringe the patent. However, Centrix now will not even conceded that a brush lacking this required structure is non-infringing.

[3]  Another element claimed in the utility patent is that the brush be bendable by the user by means of a manufactured flattening of the brush walls behind the bristle end, i.e., a crimp.

2

Even now, Centrix Inc. ("Centrix") concedes that the settlement discussions of April 16, 2004 involved agreement on more than just that parties agreed that a solid handle brush would be deemed non-infringing. Dr. Dragan states in paragraph 8 of his declaration that "I did propose brush construction*s* that Centrix would consider to be a non-infringing brush construction." (emphasis added). Thus, Centrix clearly admits that more than one form of brush construction was discussed and agreed would not be deemed infringing.

Centrix, however, cannot square that admission with what it claims were the only brush constructions agreed upon at the conference. According to Dr. Dragan, Centrix agreed that "*any* brush construction having a solid handle throughout the length thereof" would be deemed to be non-infringing. (emphasis added). He then claims that the other construction agreed upon was a solid handle brush that was pre-bent. However, a solid handle brush that was pre-bent would already be deemed non-infringing pursuant to the agreement that *any* brush having a solid handle would be non-infringing. See, Reply Declaration of Robert L. Newell ("Newell Reply Dec.") at ¶ 4.

Clearly, then, Dr. Dragan agrees that discussion continued and agreement was reached on a brush construction other than just any solid handle brush. He even concedes in paragraph 8 of his declaration that Centrix reached an agreement on a pre-bent brush. So does Mr. Newell on behalf Andon. However, the only pre-bent brush that would have any meaning to the parties after Centrix conceded any solid handle would not infringe would be a pre-bent brush having a hollow handle. Mr. Newell accurately and succinctly sets forth the several different brush configurations which were discussed and agreed upon, none of which would have been mentioned if they were all solid handle brushes which Centrix was conceding would be non-infringing.

3

Indeed, Dr. Dragon's declaration is most telling for what it does not say. It does not deny Mr. Newell's clarification that a molded (solid) handle would not be deemed to infringe simply because the end where the bristles are inserted would be hollow. Newell Dec. at ¶ 8. Dr. Dragan does not deny his making the somewhat colorful remark of wishing Andon good luck if it tried to make such a brush.[4] Yet, in Centrix's proposed language, Centrix would limit non-infringing brushes to only those that have "a totally solid handle throughout the length thereof." (Exhibit 5A to Declaration of Dr. Dragan). This language proposed by Centrix after the agreement had already been reached on April 16 creates precisely the ambiguity that the parties had already eliminated at the settlement conference by agreeing that the hollowing of the end of the handle to permit the insertion of bristles would not be deemed to make an otherwise solid handle infringing. See, Newell Reply Dec. at ¶ 3.

Likewise, Dr. Dragan does not deny discussing a brush that is bendable by means other than a crimp. Rather, he admits that the discussions and agreement went beyond just any solid handle brush, yet he cannot present any coherent and rational explanation of what non-solid handle brushes were the subject of such discussion and agreement. Andon submits that he cannot do so, because the discussion and agreement on other configurations was exactly as describe by Mr. Newell as relating to configurations with hollow handles. Simply put, Centrix's argument about no agreement being reach other than on solid handle brushes is simply lacking any rationality in light of what Dr. Dragan concedes in his declaration.

---

[4] While Dr. Dragan now asserts in paragraph 11 of his declaration that he does not understand what the other configurations were that were discussed that day, his "good luck" comment clearly indicates that he understood what was discussed at that time. It should also be noted that Centrix, of which Dr. Dragan is C.E.O., is a one third shareholder in Andon and hence is not unaware of brush constructions.

Indeed, Centrix even admits the it had agreed that at least one form of bendable hollow handled brush (the Biderman's brush) was agreed to be non-infringing. Declaration of Dr. Dragan at ¶ 11; Newell Reply Dec. at ¶ 6. Yet in an apparent attempt to obfuscate the scope of what was agreed upon at the April 16 conference, Centrix does not inform this Court of the hollow-handled nature of the Biderman's brush which Dr. Dragan admits was agreed at the April 16 conference to be deemed non-infringing. Also, Centrix offers no reason why it did not include that admitted agreement on the Biderman's brush in its proposed Modification which it now claims reflects what was agreed upon at the conference.

Likewise, Dr. Dragan does not deny in his certification that Centrix agreed to permit the sale of the allegedly infringing brushes in Andon's possession for a paid up royalty of $500.00. Rather, as is clear from the correspondence after the settlement conference, Centrix simple chose to change is position after an agreement had already been reached on that issue. It is submitted that is precisely what Centrix has also done with respect the brush configurations which were agreed upon at the conference.

Dr. Dragan does not deny that at the conclusion of the conference and in chambers, Andon's counsel stated that he would send proposed language to Centrix's attorney later that day or on Monday setting forth a more formal description of the products that were being deemed not to infringe. See, Newell Dec. at ¶ 13. How, Dr. Dragan as a layman could have an understanding that the Court would place the settlement on the record (Dragan Dec. at ¶ 14) when counsel had agreed to memorialize the non-infringing configurations later that day or the next business day is a mystery (and a mystery which is irrelevant to the fact that a settlement had been reached at the conference and that a written memorialization would be forthcoming). Rather, as explained by Mr. Newell, Andon wanted a written agreement to memorialize the

settlement since Andon was genuinely concerned that Centrix could not be trusted. See, Newell Reply Dec. at ¶¶ 8-11.

As set forth in more detail in the Newell Reply Dec., the declaration of Dr. Dragan actually corroborates Newell's previous declaration regarding what was agreed upon at the conference. Dr. Dragan agrees that agreement was reached on pre-bent brushes after agreement had been reached on solid handled brushes. Declaration of Dr. Dragan at ¶¶ 10-11. Yet such a discussion and agreement on pre-bent brushes has meaning at that point only if it includes brushes with non-solid handles. Newell Reply Dec. at ¶¶ 4-5. Dr. Dragan's admission that Centrix agreed that the Biderman's brush would be non-infringing (Declaration of Dr. Dragan at ¶ 11) corroborates Mr. Newell's declaration the agreements at the conference were not limited to solid handled brushes and included certain hollow handled brushes. Newell Reply Dec. at ¶¶ 6-7. The language set forth in the April 19 letter from Andon's counsel embodied the very matters agreed upon at the April 16 conference. Newell Reply Dec. at ¶¶ 3,4, 7. Although denying the conclusion that an agreement was reached, Dr. Dragan's declaration actually establishes facts showing that an agreement was reached.

## ARGUMENT

### POINT I

**THE ORAL AGREEMENT REACHED AT THE APRIL 16, 2004 CONFERENCE IS ENFORCEABLE WHEN IT WAS REACHED THAT DAY AND CENTRIX MAY NOT NOW REPUDIATE IT**
**(Responsive to Pages 11-12 of Plaintiff's Brief)**

The record is abundantly clear that what has happened is that Centrix has reconsidered what it had already agreed and decided to repudiate that agreement. Newell Reply Dec. at ¶ 11. The record is clear that in response to the April 19 letter setting forth language to memorialize the April 16 agreements, Centrix's response did not deny that (a) such matters had been agreed

upon or (b) that the language did not set forth what was agreed upon at the conference. See, April 21, 2004 letter from Mr. Fattibene to Mr. Winters, Exhibit D to Declaration of Kenneth L. Winters; Exhibit 2 to Declaration of Dr. Dragan. The law is clear that once an agreement is reached it can be enforced by the Court even if it has not been reduced to writing. Brock v. Scheuner Corp., 841 F.2d 151, 154 (5th Cir. 1998). Thus, after having agreed at the conference, the repudiation of the agreement five days later is too late. The agreement became enforceable when it was reached at the conference.

## POINT II

### A DENIAL OF CENTRIX'S MOTION TO ENFORCE AN ALLEGED SETTLEMENT AGREEMENT OF JANUARY 16, 2004 DOES NOT PRECLUDE THE GRANTING OF ANDON'S MOTION WITH RESPECT TO THE SETTLEMENT OF APRIL 16, 2004
### (Responsive to Pages 12-13 of Plaintiff's Brief)

Centrix argues that because the final form of settlement agreement tendered by Andon after the April 16 conference incorporates much of Centrix's proposed form of January 16, 2004, settlement agreement that a denial of Centrix's motion requires a denial of Andon's motion.

Centrix's argument is specious. The issue presented by Centrix's motion is whether Andon's insistence of a provision in the proposed forms of settlement agreement that the only defense relinquished with prejudice is the one specifically set forth in that agreement means that Andon agreed to a dismissal of all defenses with prejudice. That is a point of a failure to agree with respect to *that* proposed form of agreement. For the reasons set forth in opposition to Centrix's motion, that motion must be denied because there was not an agreement by Andon to dismiss all of its defenses with prejudice.

The present motion, however, involves a different settlement. The difference is that in exchange for the agreement to dismiss Andon's defenses with prejudice, Centrix agrees that the specified types of brush constructions do not infringe. The present motion by Andon involves a

7

settlement that the parties agreed upon which resolved the disagreement over a dismissal with prejudice in exchange for an agreement on non-infringing configurations.

Simply put, even though the forms of settlement agreements are similar in many terms, the terms are not identical. The settlement reached on April 16 is not the same as the one alleged but not reached in January 2004. While it adds the term that Centrix sought in January and as to which Andon did not agree at that time, the addition of that term was accompanied by the agreement upon the safe harbors that were set forth in Andon's form of agreement sent April 22, 2004. See, Exhibit H to Declaration of Kenneth L. Winters.

As set forth in the preceding point, Centrix's "unequivocal rejection" of the settlement terms after it has orally agreed to them at the April 16 conference does not prevent an enforceable oral agreement from having been created at the conference.

## POINT III

### THERE IS NO MERIT TO ARGUMENT THAT THE DECLARATION OF KENNETH WINTERS SHOULD BE STRICKEN OR ELSE HE SHOULD WITHDRAW AS COUNSEL
**(Responsive to Pages 14-15 of Plaintiff's Brief)**

Without citation to any authority other than Rule 3.7 of the Connecticut Rules of Professional conduct, Centrix asserts that the Winters Declaration must either be stricken or he must withdraw. Case law, however, indicates that Mr. Winters is not a necessary witness such that he must be disqualified. It has been held that "[a] finding of necessity takes into account such factors as the significance of the matters, weight of the testimony and availability of other evidence." Tropical Suntan Centers, Inc. v. Salvati, 1 Conn. L. Rptr. 497, 498 (April 12, 1990, Meadow, J.). "There is a dual test for 'necessity.' First the proposed testimony must be relevant and material. Second, it must be unobtainable elsewhere." Id. (quoting Security Gen. Life Ins. v. Superior Court, 149 Ariz. 332 (1986)).

8

Since Mr. Newell has testified to virtually all the facts set forth in the Winters Declaration, Mr. Winters' statements are not unobtainable elsewhere and his testimony is not "necessary" under that rule. As to Mr. Winter's identification of the exhibits attached to his declaration, such identification is with respect to uncontested matters. A declaration as to such matters is not prohibited. Rule 83.13(a)(1) of the Local Rules of the District of Connecticut.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that the motion by Andon to enforce a settlement and the motion to stay discovery be granted.

Respectfully submitted,
ANDON BRUSH COMPANY, INC.

By: Kenneth L. Winters, Esq. (CT25530)
Carella, Byrne, Bain, Gilfillan,
  Cecchi, Stewart, & Olstein
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700 (Tel.)
(973) 994-1744 (Fax.)
Email: kwinters@carellabyrne.com

Matthew C. Mason (CT 15291)
Gregory and Adams, P.C.
190 Old Ridgefield Road
Wilton, CT 06897
(203) 762-9000 (Tel.)
(203) 834-1628 (Fax)
Email: mmason@gregoryandadams.com

9

## Declaration of Service

I declare under penalty of perjury that on the date set forth below, I did cause a copy of the Reply Declaration of Robert Newell, and Defendant Andon Brush Company, Inc.'s Reply Memorandum In Support Of Motion To Enforce Settlement And To Stay Discovery to be sent by Federal Express overnight delivery service to:

> Arthur T. Fattibene, Esq.
> Counsel for Plaintiff
> Fattibene and Fattibene
> 2480 Post Road
> Southport, Connecticut   05890

and a copy of the same by Federal Express overnight delivery service to:

> Matthew Mason, Esq.
> Connecticut Counsel for Defendant
> Gregory & Adams
> 190 Old Ridgefield Road
> Wilton, Connecticut,   06897

Executed on May 21, 2004.

_Kenneth L. Winters_ (signed)
Kenneth L. Winters.